HENRY KRUSE

*v.*

HUDSON COUNTY CONSUMERS BREWING COMPANY.

[Decided December 29th, 1911.]

1. A subscription to the stock of a corporation does not in itself make the subscriber a shareholder, but his rights and the conditions of his becoming a shareholder must be determined in each instance by the contract of subscription.

2. Jurisdiction in a court of equity to require that a corporation shall consider a subscriber to its stock as a stockholder and issue him shares of stock must be rested upon the doctrine of specific performance, and, to entitle him to such recovery, the stockholder must show that he has made a contract with the corporation by which he is bound to make certain payments, in return for which the corporation has agreed to recognize him as a stockholder.

3. Where, in a bill to have a subscriber to stock recognized as a stockholder, the plaintiff recites that the contract of subscription was that no more than sixty per cent. of the par value of the stock in question was under any circumstances to be levied against the subscriber, and that no cash payment was to be required in any instance, the payment to be made by services of the complainant's assignor, and the only proof as to a contract is a written paper received by the complainant, or his predecessor in title, which merely recites that he has paid $100 on account of the subscription of $1,000 for ten shares of stock, there is no such contract shown as will entitle the complainant to the relief sought.

4. Where upon a contract of subscription to stock, under which the subscriber was bound to make part payments, there was an absolutely unexplained default by the subscriber, and beyond his first payment nothing

was paid thereon for ten years during which the company in which the stock was subscribed had become established and successful, equity will not, in view of his laches, grant relief by declaring him a shareholder and requiring the issuance of shares of stock.

5. Where by his bill a person asking equity to declare him a shareholder in a corporation shows that a recital showing the payment of $100 each on ten subscriptions of $1,000 was merely incident to a contract of subscription, and not the contract itself, he cannot thereafter claim that the certificate of receipt is the contract, and that his obligation was merely to pay the sums shown where no such language is expressed in the certificate, and there was no proof thereof.

6. Although a person seeking to have himself declared a stockholder in a corporation shows by his bill that ten years ago he paid $100 on a subscription of $1,000, but makes no explanation as to why he has not paid the balance, what his contract was concerning the balance, or that before filing his bill he had offered to do those things which he was required to do in pursuance of his contract, but, on the contrary, claims that he is not under any further obligation to make any payments to the company, equity will not grant the relief sought.

Heard on bill, answer, replication and proofs in open court.

The bill in this suit sets out that in August of 1899 the Hudson County Consumers Brewing Company was incorporated in New Jersey, with an authorized capital stock of $300,000—three thousand shares of a par value of $100 each—and on the 2d of March, 1900, increased its authorized capital stock to $1,000,000; that it was formed to build a brewery and engage in the brewery business; that it was proposed to finance the company through subscriptions to capital stock payable in installments, which installments should not exceed in the aggregate sixty per cent. of the par value of the stock subscribed for, which concession was deemed necessary in order to make the investment attractive; that Charles S. Terney was one of the promoters, and was the architect and engineer engaged in the erection of its plant and building; that incidentally thereto he became a subscriber to the capital stock of the company for a considerable amount of stock, exceeding the par value of $10,000; that on the 9th of February, 1900, he subscribed for at least one hundred shares of said capital stock, and paid thereon $1,000, and that said brewing company did thereupon agree to issue to him certificates for said shares whenever the same should be ready for de-

livery; and that it was agreed between the brewing company and Terney that the balance to be paid upon the said subscription might be paid by the said Terney by the credit of the fees due him or to become due him as the engineer and architect for the said building and plant; that the formal stock certificates not being ready, the brewing company caused the Second National Bank of Hoboken to issue its certificates to said Terney, ten in number, each in the following form:

"CERTIFICATE AND RECEIPT.

"HOBOKEN, N. J., February 9, 1900.

"The Second National Bank of Hoboken, N. J., hereby certifies that it has received from Charles F. Terney the sum of one hundred dollars on account of his subscription of one thousand dollars for ten shares of the capital stock of the Hudson County Consumers Brewing Company, and that it has credited the account of said Hudson County Consumers Brewing Company with said sum, and hereby acknowledges the receipt thereof.

"Witness our hand and seal this ninth day of February, 1900.

"JOHN F. SCHOFIELD,
"*Cashier.*

"(Corporate seal of the Second National Bank.)
"Countersigned by the Hudson County Consumers Brewing Company.

".......................
"*Treasurer.*

".......................
"*President.*"

The complainant states his ignorance of whether Terney at that time paid in cash the $1,000—*i. e.,* $100 on each of the ten certificates and receipts, or whether he was credited on account of fees due him for services as architect and engineer; but charges that it was agreed between Terney and the brewing company that the balance of his subscription should be fully paid for by his services, and that no cash should be required of him.

The complainant then charges that Terney, for a money consideration, sold his subscription rights to Charles Flynn and endorsed on the back of each an assignment, which was witnessed by the secretary of the brewing company. This was on the 26th of March, 1900; and Terney was at that time actually engaged in his work as engineer and architect of the brewing company's plant and building, and Terney represented to Flynn that no

greater sum than sixty per cent. of the par value of the stock would be called for under an agreement between Terney and the company, and that such sums as might be assessed upon the subscription certificates of Terney were covered by the fees due to Terney as architect and engineer; and that Flynn gave notice to the brewing company of his assignment; that thereafter, and on the 5th of October, 1900, Flynn assigned said certificates to John Cawein, who, on the 28th of May, 1908, assigned the same back to Charles Flynn, and Flynn, on the 22d of May, 1908, assigned said certificates to the complainant, and that the brewing company has not at any time issued stock certificates to correspond with the certificates of deposit to either Terney, Flynn, Cawein or the complainant.

The complainant then proceeds to set out that the brewing company built its plant and operated it successfully, and paid dividends from the year 1900, but has not paid any to either Terney or his respective assignees up to and including the complainant.

The complainant further charges that the brewing company did not make any further call upon the subscriptions against Terney up to the time of his assignment to Flynn, of which the brewing company had notice, nor have any such calls been made upon Flynn, nor upon his assignee, Cawein, nor upon the complainant; that the brewing company has refused, and still refuses, to issue to the complainant, stock certificates certifying him to be the holder of one hundred shares of the capital stock of the company; and has likewise refused to issue its said stock certificates to the complainant in any amount whatever; and has refused, and still refuses, to specify the amount, if any, still due upon the stock subscription of Terney now held by the complainant; and has refused, and still refuses, to pay to the complainant, or to account to him for the dividends accrued upon said stock, notwithstanding that the complainant sets out that he and his predecessors have, at all times, been ready to pay the amount, if any, justly due thereon.

The prayers are that the brewing company, Terney, Flynn and Cawein should make answer; that the brewing company and Terney should set forth and discover the contract of sub-

scription to the capital stock made between the brewing company and Terney, and set forth and discover the names of other subscribers to capital stock, who subscribed at the same time and under the same conditions, and the contract between the brewing company and Terney for the services of Terney in the promotion of the business enterprise of the defendant company, as well as the contract concerning his services as architect and engineer of the defendant company, and the amounts of money paid by Terney on account of his subscription to the one hundred shares claimed by the complainant, as well as upon any other subscription made by him to the capital stock of the company, and the dates, and likewise the amounts paid by the brewing company to Terney for his services, and the amounts due on that account as well as the amount to grow due from the brewing company to Terney; that the brewing company may likewise discover the amount of dividends declared by the company, and when declared and paid, and what disposition was made of the dividends declared upon the stock subscribed for by Terney, and the amount claimed to be due by the brewing company upon the stock subscribed for by Terney; and that an account may be taken of the dividends due upon the said stock or subscription rights, and that the brewing company may be commanded, upon the ascertainment of that amount, if there is any such, due upon the subscriptions, and the payment or tender by the complainant thereof, to issue its certificate or certificates in due form, certifying the complainant to be the holder of one hundred shares of the capital stock of the defendant company; and may be commanded to accord to the complainant all the rights of a stockholder of one hundred shares of its stock, and that he may have such further and other relief as the nature of the case may require and as may be agreeable to equity.

The only answer filed was by the Hudson County Consumers Brewing Company, and in that answer it admits its incorporation; the original authorization of capital stock, and the increase thereof, as set forth in the bill, and the purpose of the company as so set forth. It denies that it was proposed to finance the company through the subscription to its stock, payable in installments, and that such installments should not, in the

aggregate exceed sixty per cent. of the par value of the stock subscribed for. It admits that Terney was one of the original promoters, was the engineer and architect of the company, and that he became a subscriber to the capital stock of the company for a considerable block of stock, exceeding in par value $10,000; and it admits that Terney, on or about the 9th of February, 1900, subscribed for at least one hundred shares of said capital stock and did pay thereon $1,000; but it denies that said subscription to the last named stock was incidental to Terney's employment as engineer and architect; and it denies that it agreed to issue to Terney certificates for such shares whenever the same should be ready for delivery. It denies that it was agreed between Terney and the company that the balance to be paid upon the said subscription might be paid by Terney by crediting against the same amounts due or to become due him as engineer and architect on the plant. It denies that the stock certificates were not ready for delivery, and that for that reason it caused the Second National Bank of Hoboken to issue its certificate and receipt; and says that at the time the stock certificates were ready to be delivered to all persons subscribing and paying par value for the stock; and it says that the reason said certificate and receipt was issued by the bank to Terney was because Terney had only paid ten per cent. of the par value of the stock subscribed for by him, and it was intended as a receipt for the amount so paid; and that Terney at that time did pay that amount. And it further denies that it was ever agreed between Terney and the defendant company that the balance of his subscription for the said one hundred shares should be fully paid for by his services and that no cash should be required of him. It then proceeds to deny the assignment by Terney to Flynn, and that at the time of the alleged assignment Terney had any right, title or interest which he could sell or assign; it denies that at that time Terney was actually engaged on the work of designing and supervising the erection of the buildings, &c., of the company.

It denies that Terney made the representations to Flynn which the bill sets out. It denies that any such contract was ever made between it and Terney whereby no greater amount

than sixty per cent. was to be called on the stock, and that all sums called as against Terney were to be covered by his fees as architect and engineer. It denies that Flynn ever gave notice to the company of his assignment. It pleads ignorance of the alleged assignments from Flynn to Cawein and by Cawein back to Flynn and by Flynn to the complainant; but states that if such assignments were made the complainant obtained no right, title or interest in the certificates by reason thereof. It admits that no stock certificates were ever issued on account of the subscription of Terney for the one hundred shares aforesaid, and that the reason was because neither Terney, Flynn, Cawein nor the complainant ever paid any of the assessments levied against such stock after the payment ·of the ten per cent. originally paid by Terney; and sets forth that for that reason, and on the 6th of August, 1901, the said certificates were canceled, with the knowledge and consent of Terney, and the amount which Terney had paid thereon was credited on account of payments due upon other stock of the company subscribed for by Terney, and that this was done with the knowledge and consent of Terney and by reason of an agreement between Terney and the company. It admits the completion of its buildings, its successful business, and that it paid dividends, and sets out the amounts thereof and the times, and admits that it has paid no dividends on account of these one hundred shares of stock in question, and states as the reason that the said certificates were canceled, and that no amount had been paid on account of the subscription other than the original payment by Terney.

It denies that it had made no further call upon the subscription against said Terney up to the time of his assignment to Flynn, and said that such calls were made upon said Terney prior to said assignment. It admits that no calls were made upon Flynn or Cawein or the complainant, and that the reason therefor was because it had no knowledge or notice of the alleged assignments. It admits that no stock certificate certifying the complainant to be the holder of one hundred shares of the capital stock of the company was ever issued by the company, or that stock certificates for any number of shares were

ever issued to him. It denies, however, that it ever refused or now refuses to specify the amount, if any, still due upon the stock subscription of Terney, now alleged to be held by the complainant, or that it has refused to pay the complainant or account to him for the dividends, and says that the complainant has never requested the issue to him of the stock certificates certifying him to be the holder of one hundred shares of the capital stock of the said company; and that he has never requested the defendant to issue stock certificates to him in any amount whatsoever, and that he has never requested the defendant to specify the amount, if any, still due upon the stock subscribed for by Terney, and that he has never requested the defendant to pay to him or to account to him for the dividends accrued upon said stock; and it says that the complainant has never tendered to this defendant any money due upon said subscription, and has never notified or informed this defendant of his willingness and readiness to pay the amount, if any, justly due thereon; and it says that the complainant is not entitled to have issued to him any shares of the stock whatsoever by reason of the said subscription of the said Terney.

The defendant sets out that the only contract of subscription to the capital stock is contained in the prospectus issued by it, which is set forth in full in the answer; and among other things therein is the following:

"All payments made on subscription for stock are deposited in the Second National Bank of Hoboken, which will furnish to the subscriber a certificate of such deposit countersigned by the President and Treasurer of this company. Stock subscribed shall be paid for in the following manner:

"Ten per cent. upon subscription for which a certificate of payment as set forth above will be furnished the subscriber.

"Twenty-five per cent. two months from date thereof.

"Twenty-five per cent. two months from date of last payment above.

"The balance as the Board of Directors may hereafter determine."

The answer sets forth that there was no contract between the defendant and Terney for services in the promotion of the business of the company, but there was a contract for his services as architect and engineer, which was the usual architect and engineer's contract; and it says that the entire number of shares

of capital stock subscribed for by Terney is four hundred and eight shares, of which óne hundred and sixty were retransferred to the company, eighteen were otherwise transferred, and that the entire amount paid to the defendant on account of stock was the sum of $24,800, and the entire amount paid to Terney for his services rendered to the company was the sum of $21,000.

It says that the said stock subscribed for by Terney was never issued, and said subscription was canceled as aforesaid; but if it should appear that the complainant is entitled to have such stock issued to him, then there would be due upon said stock the par value thereof, together with lawful interest from the time payment should have been made for such stock. And the defendant prays to be dismissed.

*Messrs. McDermott & Enright,* for the complainant.

*Mr. John J. Fallon* (and *Mr. Arthur J. Westermayr,* of the New York bar), for the defendant, Hudson County Consumers Brewing Company.

GARRISON, V. C. (after statement of pleadings).

Since the proofs utterly fail to make out the case as it is charged in the bill, or the defense as set forth in the answer, it is necessary to exercise great care in its consideration so as to be sure what is actually being decided.

All that the complainant attempted to prove in his own case was the issuance of the certificates of payment and receipts to Terney by the Second National Bank of Hoboken, New Jersey, the assignment thereof by Terney to Flynn (which were presumably to the knowledge of the defendant corporation, because they were done in the office of the company, a rubber stamp provided by the company being utilized in formulating the assignment, and the same being witnessed by the secretary of the company), and that the subsequent assignments down to and including the one to the complainant were actually made.

In addition to the actual proof proffered by the complainant, he appealed to those portions of the answer of the brewing com-

pany which admitted its incorporation, its authorized capital; that Terney was a promoter of it and became a subscriber, and particularly that he subscribed for at least one hundred shares of its capital stock on or about the 9th of February, 1900, and that the certificates or receipts by the Second National Bank, issued on that date to Terney for his subscription, were so issued, and that Terney at that time paid $100 on each, or an aggregate of $1,-000, together with other parts of the answer which aid the complainant in making out a case.

The defendant, brewing company, offered no proof whatever. Many questions, upon which there is much discussion and the citation of numerous authorities as contained in the defendant's briefs, are not in the case for lack of proof—the writer of the briefs having evidently been of the impression that whatever was set up in the answer must be taken on behalf of the defendant as if proven, which, of course, is not the case.

Laying aside, now, for the moment, the consideration of whether the complainant has succeeded in proving that which he set out to prove at the trial, and assuming for the purpose of the present consideration of the case that he has done so—and further assuming that it is the law that a contract of subscription to shares of capital stock is assignable, and that an assignee unrecognized by the company has the same right as the original subscriber in all respects—we find this state of facts, to which the proper doctrines of equity must be applied. On the 9th of February, 1900, Charles Terney paid the sum of $1,000 in cash to the Second National Bank of Hoboken on account of a subscription to $10,000 for one hundred shares of capital stock of the Hudson County Consumers Brewing Company, and received a certificate and receipt from the bank showing that fact, which was duly countersigned on behalf of the brewing company by its proper officers. Terney duly assigned the certificates and receipts issued to him by the bank to Flynn, and this was to the knowledge of the brewing company's secretary, and in accordance with the method which the company had adopted respecting assignments. Subsequently, other assignments were made by Flynn to Cawein, by Cawein to Flynn, and by Flynn to the complainant, none of

which, however, were in any way communicated to the defendant corporation.

The defendant corporation claims to have effectually canceled Terney's rights to this stock, and denies that Terney or any successor to Terney's rights has any right in the premises with respect to this stock. It fails to produce any proof in substantiation of this claim of cancellation or forfeiture.

The question immediately pressing for determination is whether, under the pleadings in this suit and the proofs therein, it is proper for this court to grant relief to the complainant by requiring the defendant corporation to issue to him a certificate for the one hundred shares of stock subscribed for by Terney, upon his paying whatever may be found to be due to the company on account of the subscription to the same. If the complainant has any such right, it seems to me that basically it must rest, so far as his relief in this court is concerned, upon the doctrine of specific performance of contracts.

There is a great variety and contrariety of decision in the many cases which deal with the respective rights, duties, obligations and the proper remedies to enforce the same, between subscribers to capital stock, holders of certificates of capital stock who have received the same by assignment from stockholders of record, and the companies whose stock is in question. Whether there is a remedy by *mandamus* compelling the company to issue the certificate of stock has been variously decided—the cases in this state, I think, being averse to any such right; and in those jurisdictions like our own, where this right is denied, the party has been pointed to his remedy for damages for the refusal to recognize him as a stockholder. Whether a court of equity may, by appropriate action, compel the company to recognize the person as a stockholder is likewise in doubt—some cases and commentators seeming to think that such a right is clear, and others taking a different view, and no clear settlement of the subject appearing, so far as I know, in our own cases.

Many cases dealing with the general subject-matter will be found in our books; but in every instance where the jurisdiction in equity is upheld there has been found to be, I think I am safe in saying, some equity which makes the case more than a mere

fulfillment of a legally imposed obligation upon the company to transfer stock to the complainant or recognize him as a stockholder.

Where no other elements appear in the case than a subscription to stock, and a refusal on behalf of the company to issue the stock certificate to the subscriber or his assignee, I have not been pointed to any case in New Jersey, nor do I know of any, which holds that a court of equity will compel the company by mandatory process to fulfill its part of the contract and issue the evidence showing that the complainant is the stockholder he claims to be. The complainant, in his argument, does not use the words "specific performance," but insists that the equity arises out of the right of one who has the equitable title to the stock to come into a court of equity and enforce recognition of his legal title. Assuming that this is the correct basis, it is but a statement in other language of the equity administered under the head of specific performance.

It is conceded for the purposes of this discussion that the certificate of stock is nothing but the evidence of ownership—that is, evidence that the holder thereof is a sharer or shareowner in the corporation to a certain amount, and that such certificate is not necessary to establish the fact, and is only evidence of the fact. This concession necessarily leads us to the conclusion that what the actor is seeking in such litigation is recognition of his ownership, and, incidentally, the issuance to him of the customary evidence thereof; and with respect to that, I think it can be safely asserted that no case in New Jersey, in the court of equity, can be found which goes to the extent of saying that where there are no other equities involved the court has jurisdiction to require the defendant corporation to recognize as a sharer or shareowner one who has subscribed to its stock and has not received a certificate, and to compel the corporation to issue to him this evidence of his ownership. I am equally clear, that if it should be found that one has such an equity, it would be in a case where he showed that he had complied with the terms of the so-called subscription and thereby become a shareholder or shareowner and thus entitled to a certificate. It must not be lost sight of that while it is true in many instances that by the contract one who subscribes for stock

immediately becomes a shareholder, even though he has only paid a portion of the par value of the stock, which is, however, very different from finding that every subscriber to capital stock immediately becomes, irrespective of the terms of the subscription, a shareholder or shareowner or one entitled to a certificate of stock, or entitled to recognition as a stockholder. What the rights are of one who subscribes to capital stock must, in each instance, be determined by the contract between him and the company; and the words "subscriber to capital stock" cannot be held to have a fixed, definite and unchangeable meaning. In one case, by the terms of the contract, the so-called "subscriber" may have immediately become a stockholder; in another case, he might not become a stockholder until he had paid certain sums of money; and so through all the variations that contractual relations are subject to as regulated by their terms.

Those cases in our courts in which the subscriber to capital stock has been treated as a stockholder are cases in which the contract between him and the corporation showed that he was a stockholder having complied with the terms of his subscription, and that all that was required upon his behalf was a certificate evidencing the same. In the case at bar, it will be observed that there is nothing produced by the complainant to show that the corporation recognized the so-called "subscriber to stock" as a stockholder upon the payment of the $10 on each of the ten shares of stock; and the contract, as set forth by the defendant, distinctly shows that he was required to pay sixty per cent. in cash at the times and in the manner set forth in the answer before he could be properly considered as having complied with his subscription to stock, and therefore entitled to be considered as a stockholder.

If, in a bald case, such as I am considering, where no other equities are presented excepting such as arise out of an alleged subscription to stock entitling the subscriber to be considered a stockholder and to have a certificate of stock, there is found to be any such jurisdiction in a court of equity, it must be rested upon the doctrine of specific performance of contracts. In such case the subscriber shows that he has made a contract with the corporation by which he is bound to make certain payments up to an

agreed amount to the corporation, and it has agreed to recognize him as a sharer in or shareowner of the corporation and to issue to him a certificate evidencing the same.

For the purposes of establishing this jurisdiction we will assume that, just as in contracts with respect to real estate, the making of the contract vests the equitable title in the vendee and the right to the purchase-money in the vendor, and that a court of equity, in a proper case, will require either party to specifically perform the contract and completely fulfill it, so, we will assume in this case, that the contract of subscription vests in the subscriber the right to be a shareowner and to have a certificate issued to him evidencing the same (similar to a deed for real estate in a contract concerning land), and that a court of equity would have jurisdiction to specifically enforce such a contract and require the corporation to recognize the complainant as a sharer in or shareowner of the same, and to issue to him the proper evidence thereof. We will assume, in favor of this view, that such right would have the necessary mutuality—that is, that a corporation could come into equity and tender its stock to the subscriber and obtain a personal decree against him, requiring him to pay what he had agreed to pay for the same—having assumed, in favor of the subscriber, that he has the right to come into equity upon the same doctrine and demand a fulfillment of the contract as against the corporation. We will also have to assume that the underlying theory of this action with respect to this species of personal property is the same as with respect to real estate—that is, that a substitution of other land, or of money for the land, does not satisfy to the vendee that which he has bargained for and has a right to have, and that shares of stock in a private corporation have a peculiar value, like a particular piece of land, and one who has subscribed therefor is entitled to have the specific thing, and the contract for the specific thing is therefore capable of being enforced in equity.

In the case at bar, therefore, we will make all of these assumptions in favor of the complainant, and then we find that he has not set out any contract, or, more properly speaking, he has not set out and proven any contract which is complete in all of its parts and capable of enforcement specifically. He charged in his

bill that the contract was that no more than sixty per cent. of the par value of the stock in question was, under any circumstances, to be levied as against the subscriber; and, further, that with respect to this particular subscription no further cash payment was to be required to be made, but the same was to be paid for in services to be rendered by Terney. He does not prove any of these facts, nor do any allegations of the answer help him with respect thereto, unless he accepts an allegation of the answer hereafter to be referred to—which, if he does accept, I think is fatal to him. All that he proves with respect to a contract is the written paper received by him or by his predecessor in title to the same from the Second National Bank of Hoboken, New Jersey, and that simply recites that he has paid, in each of ten instances, $100 on account of the subscription of $1,000 for ten shares of stock of the company. What the other terms of the contract of subscription were as between him and the company, nowhere appears (excepting as above alluded to).

It is not an answer of this criticism to suggest that the contract evidenced by the certificate of payment and receipt is sufficient, and that by assuming that he was to pay the balance of the $1,000 in each instance immediately in cash or as called for by the directors of the company suffices, because, until we know what the contract was, we cannot tell whether the complainant is entitled to the specific performance thereof. For illustration, I think it entirely clear that if we assume that the contract of subscription was that he was to pay $100 down upon the 9th of February, 1900, as he did, on account of a subscription of $1,000 for ten shares of stock, and should be obliged to pay $100 thereafter in weekly installments until the whole $1,000 was paid, that his neglect to make any payment after the first without explanation thereof, from that period in 1900 to the filing of the bill in this suit in the year 1910, would be fatal to any interference in his behalf by a court of equity.

This leads me to consider what I have heretofore alluded to concerning this matter of the contract of subscription as it appears in this case: The complainant, as will be recalled, set out a contract which he failed to prove, by which he was not required to pay any more money than the ten per cent. The defendant in

his answer utterly denies this, but does set out what it says was the contract, and under that it appears that the subscriber was to pay ten per cent. down and receive his certificate of payment and receipt, and was then to pay twenty-five per cent. in two months from the date of the payment of the ten per cent., and twenty-five per cent. more two months from the date of such second payment, and the balance at the call of the board of directors. If, therefore, the complainant seeks to supply the lack of proof on his part as to the terms of the contract by adopting in his behalf the allegations of the defendant with respect to the same, he must, of course, take all of the allegation that .is relevant, and in doing so he takes as the contract of subscription one which required him, two months after making the ten per cent. payment, to pay twenty-five per cent. more, and two months after that to pay an additional twenty-five per cent.—that is to say, on April 9th, 1900, the subscriber was obligated to pay twenty-five per cent. in addition to the ten per cent. already paid, and on June 9th, 1900, became obligated to pay an additional twenty-five per cent. If the complainant, therefore, adopts this as his contract, it is shown that from the month of April, 1900, he has been in absolutely unexplained default upon his contract. That a court of equity would not, under the circumstances, after all these many years of delay, unexplained, extend the right of specific performance to such defaulter, seems too clear to require other than statement. I am quite clear that if, in a contract concerning real estate (about which subject-matter there is no doubt of the jurisdiction of equity under the head of specific performance), it should be provided that a man pay down $100 on account of his agreement to pay $1,000 for a certain piece of property, and he came into court and showed that he had paid the $100 and then had done nothing for ten years, the court would not decree specific performance in his favor. The utmost extent to which courts have gone in favor of vendees who have not paid at the time agreed upon, in those cases where it has not been found that time was made of the essence of the contract, has been to hold that compliance with the terms of the contract within a reasonable time is sufficient; and surely no one would suggest that ten years, or any great number of years, was a reasonable time to perform a con-

tract of purchase. If this is not perfectly clear when stated, it does not seem to me that argument, illustration or citation could be of any avail.

Furthermore, if in the case in hand the complainant adopts the contract as set out by the defendant, he clearly is not entitled to specific performance; because, undoubtedly, the action of the company against him to recover on the subscription is barred by the statute of limitations—the contract of subscription as set out by the company requiring the first payment to be made (after the ten per cent.) on April 9th, 1900; and since the company could not recover by reason of the statute, he cannot succeed in specific performance because their rights would not be mutual at the time of the decree, which is said to be requisite in that species of relief. But even if held to be so, the laches, abandonment, or however you choose to characterize the inaction of the complainant and his predecessors in interest for ten years is present and is fatal to his case.

It seems to me, therefore, to be entirely clear that the complainant in this case is in this situation: He attempts to set out a contract which we are assuming would entitle him to specific performance. He fails to prove any contract excepting such as is evidenced by the certificate of payment and receipt issued by the bank on the 9th of February, 1900. The best that could be assumed in his behalf in endeavoring to treat this as a contract of subscription, is that he was to pay the $1,000 immediately, and, if so, he is barred because of his non-payment thereof and the long delay before he asserted any rights.

Those cases in specific performance of land contracts are precisely in point which hold that one who remains inactive for a long period, and until the subject-matter of the contract has shown increasing value, is barred then to assert his rights to buy.

In the case in hand, the complainant and his predecessors in interest did absolutely nothing toward fulfilling, by payment, the contract they assert they had with the company, and waited until, by ten years test, the company is shown to be firmly established and successful and then come forward and assert their alleged rights. That a subscriber to stock, who is under obligation to make part payments by the terms of his subscription contract,

should not be held to have the right to withhold or refuse payment for years (during which the success or failure of the experiment is being determined), and when success is demonstrated be permitted to come forward and avail himself of the situation then existing, seems perfectly plain. To decide otherwise would be inequitable and unjust.

But I think the complainant is clearly barred by his own pleading from claiming that the certificate of payment and receipt of February 9th, 1900, was the contract between Terney and the company, the benefit of which he now claims, because throughout his bill he charges that there was a contract of subscription, and that this certificate of payment and receipt was only one of the incidents thereof, and makes no pretence that it was the entire contract. In view of his course of pleading, he cannot claim that this certificate of payment and receipt should be treated as the entire contract, and that his obligation was merely to pay the $100 and wait until the defendant made demands or calls for the balance.

No such language is expressed in the certificate of payment and receipt, and there is no evidence that that was the contract, and there certainly is no necessary inference thereof. Furthermore, he nowhere shows, or even attempts to show, that upon the payment of the ten per cent. he was entitled to be considered as a stockholder so as to invoke the principle that, being a stockholder, he could only be deprived of his rights by forfeiture thereof in accordance with the statute.

As is said elsewhere in this opinion, whether one who does what is called "subscribing to capital stock" thereby becomes a stockholder immediately upon signing the subscription must depend upon the contract between him and the company, there being a clear distinction between those cases in which, by the terms of the contract, he thereby does become a stockholder, and those where he does not until he does some other thing than merely sign his name, or make some one or more payments—each case being necessarily determined in this respect by the terms of the contract as proven.

In fine, the very fact that he paid this money not to the company but to the bank, would give rise to the inference that he was

not a stockholder who was paying in response to a call of ten per cent., but was one who was undertaking, in accordance with some terms not disclosed, to make payments upon account of stock; and whether or not he thereby, upon making the first payment, became a stockholder in accordance with the cases, would depend entirely upon the terms of the contract, which are, so far as the complainant is concerned, absolutely undisclosed.

However, I have said enough to show that, in my view, in a case of this character, a complainant must set out and prove all of the terms of the contract that he seeks to have specifically performed. I have said enough above concerning the situation that arises if the complainant seeks to take advantage of that which the defendant has set up as the contract; and I have sufficiently pointed out my view that one who agrees to buy corporate stock and is termed a "subscriber," thereby may or may not, by virtue of the contract, immediately become a stockholder as the terms of the contract may determine; and that in this suit there is no evidence of any contract that, by the payment of the ten per cent., he had the right to be recognized as a stockholder.

I have said nothing concerning the question as to whether or not the complainant, in any event, could recover herein, assuming all other points in his favor, in view of the allegations of his bill and the utter failure of his proof to agree therewith. I have assumed in his favor that, under the prayer of general relief, the court would accord to him relief if he made out a case calling for equitable consideration, notwithstanding the fact that he utterly failed to make out the case as set forth in his bill.

Along the line that I have been considering this case—that is, assuming the jurisdiction of the court, and assuming that the complainant's case is being tested not by what he pleaded but by what he proved—there are other considerations making against the complainant. If the court should find that a subscriber under a contract dated February 9th, 1900, who had paid $100 on account of a thousand, and gave no explanation as to why he has not paid the balance, or what his contract was concerning the payment of the balance, would be entitled to relief, surely it would only do so upon his showing that, before filing his bill, he had offered to do all of those things which it was incumbent upon him to do in

pursuance of the contract, and that the defendant had refused to do what it was obligated to do. The complainant not only fails in this particular, but his whole bill is a demonstration of an opposite state of facts. The claim in his bill is that he is not under any obligation to pay any money to the company; that he is entitled to be recognized as a shareowner to the extent of the one hundred shares upon which the $1,000 has been paid, without any other liability with respect to the payment therefor. He utterly fails to prove to the court that he was justified in making any such claim, and the defendant corporation therefore was entirely justified in refusing to recognize any such claim; and as this is the only claim that he is ever shown to have made upon the corporation previous to bringing his suit, he demonstrates thereby that he was not entitled to bring his suit.

I do not decide, because I do not have to, whether it will always be held—or, if you please, ever be held—that a complainant in a specific performance case, who is the vendee, must first, before filing his bill, tender complete performance upon his part; but I do decide that where a complainant has been making an utterly false and unfounded claim and that has been refused, he may not come into court still asserting such false and unfounded claim, and obtain a decree upon a totally different claim, in respect to which latter he has never offered to do what it was his duty under the contract to do.

I have not been unmindful of a line of cases, dealt with by me in the case of *New York and Eastern Tel., &c., Co.* v. *Great Eastern Telephone Co. (1908), 74 N. J. Eq. (4 Buch.) 221;* affirmed *(Court of Errors and Appeals, 1908), 75 N. J. Eq. (5 Buch.) 298,* which holds that where the corporation has recognized the subscriber—that is, has issued the certificate of stock to him and put him upon their books as a stockholder, they may not, under our statute, displace him as a stockholder, or forfeit his stock, or cancel the same, excepting as prescribed in the statute; and I am not attempting to hold in this suit that the defendant company has legally effected a forfeiture, or has succeeded in cancelling any subscription (although this is a different matter), or is not liable in law to the complainant herein. I am not attempting to decide whether a subscriber to capital stock is not or will

not, under certain circumstances, be considered to be a stock-holder, because that I do not understand to be the point in this case. What I am holding is that where one who claims to have a contract entitling him to be a stockholder, and who claims the right to have that specifically enforced in equity, fails to set out the contract, or relies on a contract which shows that he has for-feited his rights in equity to obtain the relief of specific perform-ance, will not have the same accorded to him therein.

Under the facts, as I find them, and the law applicable thereto, the bill must be dismissed, with costs.