### UNITED STATES STEEL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109169.    Promulgated July 20, 1943.

*A. C. Newlin, Esq.*, for the petitioner.

*Thomas H. Lewis, Jr., Esq.*, and *Arthur Groman, Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* The only question presented is whether the total of the amounts credited. by petitioner to certain employees' stock subscription accounts which became fully paid in 1930, i. e., $1,002,-468.50, constitutes dividends or additional compensation for services. If said amount constitutes additional compensation for services, the amount is deductible in 1930. With respect to the year of the de-

duction, no issue is raised. Cf. *Electric Storage Battery Co.*, 39 B. T. A. 121.

Petitioner contends that, pursuant to section 23 (a) of the Revenue Act of 1928,[1] it is entitled to deduct from its gross income for 1930 the above amount, which is the aggregate of the credits made by petitioners to its employees' unpaid subscription accounts in the years 1926 to 1930, inclusive. Petitioner contends that these credits were additional compensation to its employees and are deductible as such.

Respondent contends that the agreements between petitioner and its employees were subscription agreements as distinguished from contracts to purchase stock, so that the employees became stockholders immediately upon signing the agreement, and the various credits in 1930 and prior years were dividends to which the employee was entitled as a matter of right rather than additional compensation. Respondent places great emphasis upon the words "subscription" and "subscriber" which appear in the agreement. From these words he argues that the employees became shareholders from the moment of the execution of the agreement, regardless of its conditions. Terminology, however, is not conclusive in the construction of an agreement. As was said in *Alger-Sullivan Lumber Co.* v. *Commissioner*, 57 Fed. (2d) 3:

> The use of the word "sale" in a contract does not necessarily conclusively determine its character. Its meaning may be qualified and the word deprived of its ordinary force by other provisions of the agreement.

The same principle of law was enunciated in New Jersey, where the court in construing a so-called subscription agreement, in the case of *Kruse* v. *Hudson County Consumers' Brewing Co.*, 79 N. J. Eq. 392; 82 Atl. 104, 108, said:

> * * * It must not be lost sight of that while it is true in many instances that by the contract one who subscribes for stock immediately becomes a shareholder, even though he has only paid a portion of the par value of the stock, which is, however, very different from finding that every subscriber to capital stock immediately, irrespective of the terms of the subscription, becomes a shareholder or share owner or one entitled to a certificate of stock, or entitled to recognition as a stockholder. What the rights are of one who subscribes to capital stock must in each instance be determined by the contract between him and the company; and the words "subscriber to capital stock" cannot be held to have a fixed, definite, and unchangeable meaning. In one case, by the terms of the contract, the so-called "subscriber" may have immediately become a stockholder; in another case, he might not become a stockholder until he had paid certain sums of money; and so through all the variations that contractual relations are subject to as regulated by their terms. Those cases in our courts in which the subscriber to capital stock has been treated as a stockholder are

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) Expenses.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

cases in which the contract between him and the corporation showed that he was a stockholder having complied with the terms of his subscription, and that all that was required upon his behalf was a certificate evidencing the same. * * *

Petitioner is a New Jersey corporation, and agreements relating to the acquisition of its stock are to be construed and interpreted in accordance with New Jersey law. Fletcher, Cyclopedia of the Law of Private Corporations, vol. 4, sec. 1362.

It is evident in this case that these agreements were not "subscription agreements" since neither party could have enforced the agreement against the other until all its terms had been complied with. The employees could have canceled their agreements at any time either by request without leaving petitioner's employ, by voluntarily leaving the service, or by discontinuing payments without the consent of petitioner for three consecutive months. They had no unconditional obligation to take and pay for their stock. This alone is indicative that the agreements were not "subscriptions," for if the employees were subscribers they would have been liable to the corporation or its creditors for the unpaid balance of the agreed price. The employer also had the right to cancel the agreements, pursuant to New Jersey statute, by abolishing the plan and returning the payments made by its employees on account of the purchase price. In commenting on this statute, the court in the case of *Schaefer* v. *Bowers*, 50 Fed. (2d) 689, said:

Second, the right to cancel the plan was reserved in the widest terms allowed by the New Jersey statute; that is, at the pleasure of two-thirds of the shareholders. If it was cancelled, the company need return only the contributions of the employees. * * * The plaintiff argues that, once the trustees bought shares and credited them to an employee the company had no power under the statute to deprive him of them. We do not so read it. Shares are not "issued", whose title remains in the trustees, merely because they are provisionally credited to the employees upon the books. They may never be "issued" at all; it was precisely the purpose of the plan at bar to hold them back until it appeared whether the employee was entitled to receive them at the close of the period. * * * The employer is to be allowed at any time to abandon the venture, if it turns out impracticable, either because the shares fall in value, or for other reasons. The only limitation is that he must always insure his employees against loss. * * *

   *      *      *      *      *      *      *

Therefore, we think that when the shares were distributed at the close of the five-year period, the plaintiff got for the·first time the income which had theretofore been accumulating, conditionally upon his continued service and the company's continued purpose to complete. *Appeal of Lister*, 3 B. T. A. 475. Until then it was uncertain whether he would ever receive the shares; they had become his only provisionally. * * *

Here, the credits were not regarded as final and complete until the purchase was completed. Then the stock was turned over to the

employee and it was unconditionally his property. Until then the credits were only tentative. If the employee canceled his agreement or left the service of the company, the amounts contributed by petitioner to his account were paid into a special fund which was to be divided between those employees who completed their agreements and held their stock for five years. Under the circumstances, it is held that the agreements were not subscriptions which vested in the employee a shareholder status at the time he signed the agreement.

This brings us to the main question, whether the amounts measured by dividends which petitioner credited to its employees' subscription accounts constitute additional compensation to employees in the year in which all the payments were completed. It is necessary to examine the entire plan, and the intent of the parties is of primary importance. *O'Brien* v. *Miller*, 168 U. S. 287; *Ritter Lumber Co.*, 30 B. T. A. 231; *Delbert B. Geeseman*, 38 B. T. A. 258. The substance of the plan rather than its form must be ascertained. *Indianapolis Glove Co.* v. *United States*, 96 Fed. (2d) 816, 821.

Under the plan the stock was to be paid for by (1) deductions of stated amounts from employees' wages, (2) payments by the employer of amounts measured by dividends paid on its outstanding stock, and (3) payments by the employer of "Special Benefits" consisting of amounts credited each January, starting at the rate of $3 per share and increasing by $1 each year for the next four years. In addition to this, the employer was to make payments of "additional compensation" at the end of five years to those employees who kept their stock and remained in the service of the company. The only deduction disallowed by respondent is the amounts credited by the employer measured by dividends paid on petitioner's outstanding stock, and this is upon the theory that these amounts were dividends which belonged to the employee as a stockholder.

Taking the agreement as a whole, we are of the opinion that the amounts in question were additional compensation to the employees. The plan was open only to employees of the corporation and the benefits of the plan were given to them only for so long as they remained in petitioner's employ. Even pensioners were excluded. The maximum number of shares which an employee could take was limited by the amount of his yearly wages. Thus, the contributions made by petitioner to the purchase price of the shares were directly proportional to the employee's ordinary compensation. See *Commissioner* v. *Texas Pipe Line Co.*, 87 Fed. (2d) 662 (1937), where the court held that a provision of this nature disclosed an intention on the part of the employer to add to the compensation of the employees. Also, in this case, the employee could not take any pay for stock immediately. By limiting the rate at which he could pay for the shares, he was

required to render services for a fixed minimum period. The "Special Benefits" in each year were conditioned upon a showing that the employee had been continuously in petitioner's employ since the date of the agreement, and upon production of a "statement from a proper official that he * * * has shown a proper interest in its [petitioner's] welfare and progress." The "Special Benefits" were credited to the account of a subscribing employee who had not fully paid his subscription if the same was still in force and if the employee had "otherwise fulfilled all the conditions of continuous and faithful service." They were made to the employee "as an inducement for him to keep it [his certificate] while he remains in the service." In addition, employees whose employment was suspended due to a reduction in operations did not lose their rights under the plan as long as they were willing to return to petitioner's employ. All of this is indicative of payment of additional compensation. The employee received something definite to which they would not otherwise have been entitled in consideration for remaining in petitioner's employ and participating in the plan. We held in *Chrysler Corporation*, 42 B. T. A. 795, 807, that this was an important consideration in determining whether a contribution by the employer was additional compensation..

Petietioner relies heavily on several administrative rulings which have never been revoked or modified. One of these is Office Decision 763. 4 C. B. 76, which reads as follows:

Where a corporation offers its employees the opportunity to purchase shares of its stock, and the title to the stock remains in the corporation until it is fully paid for, it is held that the so-called dividends credited to the account of the employee purchasing the stock as part payment for the stock are not in fact dividends, as dividends can not legally be declared on unissued or treasury stock. The amounts so credited, which are measured by the dividends declared on the outstanding stock, constitute additional compensation to the employees and taxable as such.

Where other amounts in the nature of special allowances are, upon the fulfillment of certain conditions, credited to the account of such subscriber as part of the payment for his stock, and where provision is made for the payment of certain amounts in the event the subscriber does not default in any payment on the stock being purchased and complies with certain other conditions, it is held that such amounts are in the nature of additional compensation.

It is held, further, however, that as the interest of the subscriber is merely a contingent interest which may be defeated by failure to execute the terms of the agreement upon which the stock is issued, the so-called dividends and special allowances credited to the account of the subscriber do not constitute taxable income to such subscriber until the terms of the agreement have been completed.

The above ruling was recently approved by the Circuit Court of Appeals for the Seventh Circuit in *Thurman* v. *Studebaker Corporation*, 88 Fed. (2d) 984 (1937), where the court, in holding that amounts credited to employees' accounts under a stock purchase plan, including

amounts measured by dividends, were deductible by the corporation as additional compensation, said, at p. 986:

\* \* \* Subsequently. the Department ruled, in Office Decision No. 763, Cumulative Bulletin 4, page 76, that where a corporation permits its employees to purchase stock, retaining title until the purchase price is fully paid, so-called dividends credited to the account of the employee purchasing the stock as part payment shall be treated as additional compensation to the employees and taxable as such, and that any sums paid by the employer upon account of purchases of stock by employees shall be treated as additional compensation. \* \* \* To the same effect were other later decisions of the Department.

Thus, in administration of the law, that branch of the government charged with its enforcement and with collection of revenue has by its regulations and decisions put a practical interpretation upon the statute reflecting the same reasoning and sustaining the same conclusions as those of the District Court. This should justify the judgment unless such interpretation is at variance with the law.

In this case, the employees were not to receive certificates of stock until completion of payment of the purchase price and upon performance of the terms and conditions of the agreement. The agreement could be canceled at will, not only by the employee, but also by the employer, pursuant to section 3, chapter 175, of the Laws of New Jersey for 1920. This provision of New Jersey law was discussed in *Schaefer* v. *Bowers, supra,* where the court held that the employee did not become a stockholder when stock was credited to him because his right to possession was conditional upon future employment and because under the New Jersey statute the employer could cancel the plan.

Petitioner's employees took advantage of their right to cancel subscriptions to an extensive degree. The percentage of canceled subscriptions ranged from approximately 15 percent in 1926 to approximately 79 percent in 1930. The facts also indicate that petitioner had at various times considerably less stock in its treasury or held by its nominees than was necessary to meet the requirements of subscriptions then in effect, but which had not matured. All of this indicates that it was not the intention of the parties to consider employees as shareholders upon their acceptance of petitioner's offer. They merely had a right to become stockholders upon the fulfillment of the conditions of the agreement. *Albert Russel Erskine,* 26 B. T. A. 147, 165.

An employees' stock subscription plan which was in many respects similar to petitioner's plan was before this Court in *Electric Storage Battery Co., supra.* Although the precise issue was not presented, it was held that amounts measured by dividends credited to employees' stock subscription accounts constituted additional compensation and could be deducted in the year when the stock was delivered

to the employees. (Respondent acquiesced in this decision, 1939-1 C. B. (Part 1), p. 11.

The only case relied upon by respondent is *Gardner-Denver Co.* v. *Commissioner*, 75 Fed. (2d) 38; certiorari denied, 295 U. S. 763. In that case, however, the court found that the subscriptions were treated as sales by the employer from the time of acceptance by the employee, and that as a necessary corollary the amounts credited to employees were in fact dividends which belonged to the employee and thus could not be considered additional compensation. There are a number of essential differences between the plan in the *Gardner* case and the plan here. In the *Gardner* case, the number of shares to which an employee could subscribe was not limited by the employee's salary; there were no special benefits or additional compensation; and, there was no provision in Illinois law which gave the employer the right to abolish the plan. These elements which are present in petitioner's plan are the factors which the courts have considered important in determining that credits or contributions by an employer to its employees are additional compensation rather than dividends.

Upon all the evidence, it is held that the payments made by petitioner in the total sum of $1,002,468.50 to its employees in 1930, representing credits on employees' unpaid subscription accounts measured by dividends on its outstanding stock, were additional compensation to its employees. Petitioner is entitled to the claimed deduction.

*Decision will be entered for the petitioner.*

