JOSEPH W. FRAZER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109606.   Promulgated April 17, 1945.

*Thomas G. Long, Esq.*, for the petitioner.
*Paul A. Sebastian, Esq.*, for the respondent.

## OPINION.

SMITH, *Judge*: This proceeding is for the redetermination of a deficiency in income tax for 1939 of $19,069.85. The petition alleges that the respondent erred in the determination of the deficiency:

(1) By taxing as ordinary income the amount of $60,553.77 received by the petitioner from two trust funds which had been created by Chrysler Corporation.

(2) By increasing taxable dividends in the amount of $1,164.

The second issue is disposed of by a stipulation of the parties to the effect that the correct amount of the additional dividends is $1,144 instead of $1,164.

The facts have all been stipulated.

The petitioner is a resident of Grosse Pointe, Michigan. He was, however, at the time of the filing of his income tax return for 1939 a resident of Toledo, Ohio, and his return for that year on a cash receipts and disbursements basis was filed in the office of the collector of internal revenue at Toledo.

During the year 1929 and at all times subsequent thereto until the effective date of his resignation on January 19, 1939, the petitioner was an executive of the Chrysler Corporation, a Delaware corporation carrying on its manufacturing operations at Detroit.

By a trust indenture dated April 16, 1929, by and between the Chrysler Corporation as party of the first part, the holders from time to time of certificates for shares of beneficial interest issued under the provisions of the trust indenture as parties of the second part, and certain individuals named as trustees as parties of the third part, a trust fund was created for the purposes therein mentioned. This trust was and is known as "Chrysler Management Trust."

There have been several amendments to the trust indenture.

The purposes of the trust are stated in the preamble of the indenture as follows:

Whereas, the Corporation is desirous of adopting and carrying out a plan to attract and retain desirable officers and/or executives and to insure the permanency of sound and efficient management of the Corporation and its subsidiary corporations by enabling such officers and/or executives to become owners of stock of the Corporation on a basis favorable to them; * * *

The principal source of income of the trust fund was to consist of a percentage of the earnings of the Chrysler Corporation to be paid over to the trustees. These earnings were to be invested in shares of the common stock of the Chrysler Corporation and other temporary investments. This income, consisting of dividends and interest, was to be placed in an account called surplus A. Contributions to the fund by the corporation and profits from the sale of securities were to be credited to surplus B. Distributions were to be made from the trust fund out of surplus A as the trustees should determine and upon the death or resignation of any of the officers or executives who were privileged to become members of the trust fund they were, upon surrender of their certificates for shares of beneficial interest, to receive a distribution from the fund, the determination of the amount of which, and whether in cash or securities, was in the absolute discretion of the trustees.

The petitioner, as an executive of the Chrysler Corporation, was permitted to acquire certificates for 400 shares of beneficial interest upon the payment therefor of $25 per share. On October 8, 1929, the petitioner acquired such certificates upon the payment of $10,000 cash to the trustees.

In years subsequent to 1929 the petitioner received large distributions from the trustees upon his 400 shares of beneficial interest. He claimed in his income tax returns that only the excess received by him over his original investment in the trust certificates constituted taxable income. The parties have stipulated that in years prior to 1939

the petitioner recovered through nontaxable distributions from the trust fund his entire investment of $10,000 in the 400 shares of beneficial interest in the trust.

By a second trust indenture dated April 11, 1936, a second trust, called "First Adjustment Chrysler Management Trust," was established for the same purposes as the first trust. The petitioner was permitted to acquire certificates for 50 shares of beneficial interest in this second trust at a price of $7 per share and on November 19, 1936, acquired such shares by a payment of $350. The parties have stipulated that the petitioner fully recovered his original investment in these shares by nontaxable distributions from the second trust prior to 1939. The petitioner resigned from his position as an executive of the Chrysler Corporation effective January 19, 1939.

The two trusts referred to above have filed income tax returns upon the calendar year basis from the dates of their creation. In such returns they have reported as taxable income dividends and interest received upon investments, but have not included therein contributions consisting of percentages of the earnings of Chrysler Corporation. Such contributions to the end of 1938 amounted to $6,488,100.06 in the case of the Chrysler Management Trust and to $1,223,071.91 in the case of the First Adjustment Chrysler Management Trust.

Petitioner surrendered his certificates of beneficial interest in both trusts on or about April 20, 1939, and received $54,605.23 from the trustees of the first trust, and $5,948.54 from the second trust, or a total of $60,553.77. The amounts received by the petitioner were computed by the parties as follows:

400 shares Chrysler Management Trust:

| | |
|---|---|
| Return of petitioner's original cost | $8,000.00 |
| Aliquot portion of "Surplus A" account | 110.73 |
| 80% of aliquot portion of "Surplus B" account | 46,494.50 |
| | $54,605.23 |

50 shares First Adjustment Chrysler Management Trust:

| | |
|---|---|
| Return of petitioner's original cost | $350.00 |
| Aliquot portion of "Surplus A" account | 70.83 |
| Aliquot portion of "Surplus B" account | 4,727.71 |
| Dividend | 800.00 |
| | $5,948.54 |

In making his income tax return for 1939 the petitioner reported his receipt of funds from the trustees as a capital gain, only 50 percent of which was included in the gross income. The respondent has included the entire amount of $60,553.77 as ordinary income of the petitioner for 1939. He has treated it as compensation for services rendered by the petitioner taxable at 100 percent.

The parties have stipulated that the $800 dividend included in the $5,948.54 received from the trustees of the First Adjustment Chrysler Management Trust is taxable as a dividend at 100 percent of the amount thereof.

In support of his determination that the entire amount received by the petitioner from the trustees upon the surrender of his certificates for shares of beneficial interest in the two trusts is taxable at 100 percent, the respondent relies upon section 22 (a) of the Internal Revenue Code, which requires the inclusion in gross income of "gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid."

The petitioner makes three contentions as follows:

(1) The trusts in question are "pure trusts" taxable under Sections 161 and 162 and the sums received by petitioner from the Trustees in 1939 were distributions of trust corpus upon the termination of petitioner's interest in said trusts and therefore no part thereof is taxable income to petitioner.

(2) If said trusts are "employees trusts" under Section 165 the same became such by the amendment of December 2nd, 1938 and the sums received by petitioner from the trusts in 1939 represented petitioner's contributions to said "employees trusts" which petitioner made by becoming a party to said amendment and hence no part thereof is taxable income to petitioner.

(3) If the sums paid to petitioner by the Trustees out of the funds of the trusts in 1939 on assignment by petitioner to the Trustees of his shares of beneficial interest are taxable at all the same are taxable as capital gain.

The petitioner's first contention that no part of the $60,553.77 received by him in 1939 is taxable income is, as we understand it, based upon the proposition that the beneficiary of a trust is not taxable upon a distribution of the corpus of the trust. It is submitted:

That the distribution to a beneficiary of a "pure trust" out of the funds of the trust upon the termination of the beneficial interest is a distribution of corpus is too plain to require more than bare statement. The amount received by the beneficiary under such circumstances cannot be taxable income. It is not income at all. * * *

We do not think that there is any merit in this contention. The stipulated facts plainly show that the trusts never returned as taxable income the amounts received by them from the Chrysler Corporation representing a distribution of a percentage of its earnings. The respondent claimed that the Chrysler Corporation, in making these distributions was not permitted to deduct them from its gross income as additional compensation paid to its executives. It was held, however, in *Chrysler Corporation*, 42 B. T. A. 795, that such amounts were deductible from the income of the corporation. We said, at page 808:

* * * We think the amounts paid to retain the services of valuable executives clearly constituted additional compensation, under the principles laid down by the above cited authorities.

We, therefore, have this situation: The Chrysler Corporation pays a percentage of its earnings to the two trust funds here involved, which distributions have been held in effect to be the payment of additional compensation to its officers and executives. These amounts have never been returned for taxation by the trusts. The petitioner now contends that when there are distributions from the trusts in the manner shown by our findings of fact the distributions are nontaxable. We do not think that there is any legal basis for such a contention.

The petitioner further points out that by an amendment to each of the trusts dated December 2, 1938, the petitioner, along with the other holders of certificates for shares of beneficial interest, approved the amendments. The assumption is that the petitioner had rights in the trust funds as of December 2, 1938, which he paid to the trustees on December 2, 1938, and that what he received from the trustees in April 1939 had no greater value than his rights had on December 2, 1938. Therefore, it is suggested that if the petitioner had any taxable income from his receipt of $60,553.77 in 1939 that taxable income is properly allocable to a prior year.

We think there is no merit to this argument. The petitioner kept his books of account and made his income tax returns on a cash receipts and disbursements basis. He made no exchange of his certificates for shares of beneficial interest at the time he consented to an amendment of the trust instruments on December 2, 1938. He had no receipt of cash or property that was the equivalent of cash as a result of his agreeing to the amendments, the purpose of which, as we understand it, was to make the trusts "employees' trusts" within the purview of section 165 of the Internal Revenue Code.

In *Estate of Frederick L. Alldis*, 46 B. T. A. 1171, it was held that the amount paid by the Chrysler Corporation to a decedent's estate under the provisions of article VII of the Chrysler Management Trust was not taxable income to the decedent which had accrued up to the date of his death under section 42 of the Revenue Act of 1938. We there held that the trust from which the decedent's estate received a sum of money upon surrender of shares of beneficial interest was a pure trust and not an employees' trust. We did not hold, however, and our opinion in that case does not support the proposition, that a person holding certificates for shares of beneficial interest in either of the trusts here under consideration has no taxable income upon resigning his position, surrendering his certificates, and receiving from the trust the proceeds which are due him.

The final contention of the petitioner is that his certificates for shares of beneficial interest are capital assets which were held by him for a period of more than two years and that therefore he is taxable upon only 50 percent of the gain from the sale or exchange of them. Section 117 (a) of the Internal Revenue Code reads in part as follows:

(a) Definitions.—As used in this chapter—

(1) Capital assets.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), * * *

Subsection (b) of the same section states:

(b) Percentage Taken Into Account.—In the case of a taxpayer, other than a,corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

\* \* \* \* \* \* \*

50 per centum if the capital asset has been held for more than 24 months.

We do not think that the petitioner received his $60,553.77 in 1939 from the "sale or exchange" of a capital asset. By the terms of the trust indentures the certificates for shares of beneficial interests were not assignable. All that the petitioner could do with them to receive anything from the trusts was to surrender them to the trustees— much in the nature of the giving up of a receipt. Such surrender had to be made within one year from the date of the resignation.

The position of the respondent is that all of the amounts received by the petitioner from the trust funds over and above the amounts which he paid for the certificates, as to which it is stipulated that the petitioner has already recovered his cost in nontaxable income, is compensation for personal service under section 22 (a) of the Internal Revenue Code. That section, so far as material, defines "gross income" as including "gains, profits, and income derived from salaries, wages, or compensation for personal service, * * * of whatever kind and in whatever form paid."

If the percentages of earnings of the Chrysler Corporation paid to the trustees which were intended to provide additional compensation for the officers and executives had been paid over directly by the trustees to the beneficiaries of the trusts, we do not think that any question could be raised but that the recipients of such amounts would be taxable upon them as a part of their compensation received for personal services rendered. We do not see how the situation is any different when treated as it was treated in this case. The mere routing of the additional compensation through the trusts did not change its character. The distribution of earnings by Chrysler Corporation constituted an ordinary and necessary expense as a payment of compensation for services rendered. It would indeed be a strange situation if the recipient of such additional compensation were not taxable upon it in full. We think that he was. In *Commissioner* v. *Smith*, 324 U. S. 177, it was said:

Section 22 (a) of the Revenue Act is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected. See *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716, 729. * * *

In his brief the respondent argues that if the petitioner is not taxable upon the full amount of the amounts received by him from the trustees he is at least taxable on all but such portion of the amount received as can be said to be tax-paid income of the trusts. The evidence indicates that a small part of the $60,553.77 here in question constituted tax-paid income of the trusts. Such in effect was the portion allocated to the petitioner from the surplus A account. It also appears that there were certain capital gains made by the trusts in the years 1936 and 1938 from the sales of shares of stock of Chrysler Corporation. Under the provisions of the trusts these gains, even though taxable, went into the surplus B account. Since that income has already been taxed to the trusts, it is not taxable when distributed to the beneficiary. The proportionate part of the distribution from the surplus B account which is attributable to capital gains included therein should be excluded from the taxable income of the petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MELLOTT, TYSON, DISNEY, and KERN, *JJ.*, concur only in the result.