WILLIAM C. ATWATER & COMPANY, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8999. Promulgated February 4, 1948.

*Charles B. McInnis, Esq.,* and *G. Kibby Munson, Esq.,* for the petitioner.

*William A. Schmitt, Esq.,* for the respondent.

234

238

BLACK, *Judge*: The issues fall into three main divisions, previously mentioned, and will be considered in that order.

### Steinbugler Litigation Issues.

The issues under this main division are whether the respondent erred in making the adjustments labeled (a) and (b) for 1942 and (a), (b), and (c) for 1943, which we have set out in our opening statement.

We first consider adjustment (b) for 1943, because upon our decision as to that adjustment will largely depend our decision as to the other four adjustments. Petitioner deducted on its return for 1943 the amount of $308,909 as "Judgment awarded in litigation" and attached to the return a long memorandum in explanation thereof, the last paragraph of which is as follows:

This entire transaction arose out of an employment contract and the entire payment is deductible under the principle decided by the Tax Court of the United States in the United States Steel Corporation versus Commissioner, 2—T. C. No. 52, decided July 20, 1943. [2 T. C. 430.]

The manner in which petitioner arrived at the amount of $308,909 is set out in our findings, together with a detailed analysis of the total cash payment of $388,013.97. Petitioner now concedes that it is not entitled to a deduction of the full amount deducted on the return. It contends that under this issue it is entitled to deduct, under section 23 (a) (1) (A) of the Internal Revenue Code, the damages determined by the New York courts in the amount of $270,767.25, plus the unexplained addition of $20 actually paid by petitioner, or a total deduction under this issue of $270,787.25, or, in the alternative, that it is entitled to deduct the entire payment which petitioner was compelled to pay Steinbugler with respect to the 1,200 shares, plus the excess of the amount which petitioner was compelled to pay for the 300 shares over the fair market value of the said 300 shares at the date when the decision became final, namely, January 14, 1943.

The respondent contends that the total payment made by petitioner on January 25, 1943, of $270,787.25 (exclusive of the interest of $113,834.62 which the respondent allowed, and exclusive of the court costs of $3,392.10, and exclusive of the $116,366.75 which Steinbugler owed petitioner) was a capital expenditure for the purchase of its own stock and under section 24 of the Internal Revenue Code was not deductible.

The material provisions of the Internal Revenue Code relied upon by the parties are set forth in the margin.[3]

We do not find ourselves in entire agreement with either petitioner or respondent. As has already been stated, petitioner in its return took a deduction of $308,909 as "Judgment awarded in litigation" and explained this deduction as growing out of an employment arrangement with Steinbugler, and it relied on *United States Steel Corporation*, 2 T. C. 430, to support the deduction. On the other hand, the Commissioner contends that the transaction was not an employment arrangement at all, but simply a sale by Steinbugler of his stock to petitioner, and that petitioner could have no gain or loss in this repurchase of its stock; that its payment of the Steinbugler judgment, exclusive of the interest, was simply a capital expenditure and none of it is deductible. It, of course, requires no citation of authority to establish the principle that ordinarily a taxpayer has no gain or loss in the mere purchase of property. We think, however, the Commissioner is wrong in contending that the transactions narrated in our findings of fact under this issue were entirely a capital transaction and did not constitute in part an employment arrangement between Steinbugler and petitioner. We think they did. It seems clear to us that the original sale and delivery of the stock to Steinbugler and the reacquisition of the stock by petitioner were both essential elements of an employment contract between petitioner and Steinbugler, as repeatedly urged by the latter in the New York litigation, which view was sustained in all essential respects by the New York courts. But, while this is true, we do not agree with petitioner that the situation with which we have here to deal is entirely similar to the one which existed in the *United States Steel Corporation* case, upon which petitioner so strongly relies.

In the *United States Steel Corporation* case there was a subscription plan under which the corporation's employees could make application to purchase a limited number of shares of the corporation's stock and make deferred monthly payments thereon from wages, and the corporation on its part agreed to make certain credits to the employees'

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \* \*

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate;

(3) Any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made.

stock purchase accounts equaling the dividend payments on the corporation's common stock and other annual credits in the form of special benefits as additional compensation, which credits and *delivery* of the stock were specifically conditioned upon the employee remaining in the corporation's service *until* the stock was fully paid for in the manner provided in the stock purchase agreement. Under such a plan we held that the credits to the employees' stock purchase accounts measured by dividends on the corporation's common stock and other special accounts were additional compensation paid to employees during the taxable year and were deductible by the corporation under section 23 (a). We have no similar facts here. It is clear that in the *United States Steel Corporation* case the employee did not become a stockholder in the corporation until the purchase price was completed under the plan. All the so-called dividends which were credited to the employees' purchase account were not dividends at all, but were simply additional payments to the employee for his services, measured by the dividend rate paid by the corporation on its common stock.

In the instant case there is no doubt but that Steinbugler became a stockholder of petitioner in 1915 and 1916, when he acquired his original 100 shares of stock from petitioner. The stock certificates were actually issued in Steinbugler's name and were delivered to him. When in 1922 petitioner declared a stock dividend of 1,400 per cent, Steinbugler received a new certificate, for 1,500 shares of petitioner's stock, to take the place of his original certificates for 100 shares. It is true that Steinbugler and petitioner's 3 other employees who were permitted to acquire stock were permitted to acquire it on very advantageous terms, the main feature of which was they were permitted to pay for it out of future dividends, without personal obligation to pay for it out of other funds. But they were stockholders nevertheless, and when dividends were paid by the corporation, dividends were paid on their stock as well as on the rest of the outstanding stock of the corporation, and they were true dividends. To the extent these dividends were applied as payments on the purchase price of the stock here in question, they were payments made by Steinbugler, because the dividends on his stock were undoubtedly his own property. Steinbugler was, under the original purchase agreement, to apply all his dividends on the purchase price of the stock, exclusive of that purchased for cash. Later this agreement was changed so as to require him to pay only one-half of his dividends towards the purchase price of the stock. Just how much of these dividends to Steinbugler was applied on the purchase price of his stock we do not know, nor is it important that we know. We do not have Steinbugler before us as a taxpayer and we have no issue to determine as to the cost basis of his stock or when or how he was taxable on the gains which he had from

the transactions.  Cf. though, *Joseph W. Frazer*, 4 T. C. 1152; affd., 152 Fed. (2d) 282.

Since we have held that the arrangement between Steinbugler and petitioner was an employment contract between them, despite its dissimilarity to the *United States Steel Corporation* case, upon which petitioner so strongly relies, the question is, as we view it, how much of the $387,134 principal of the judgment in favor of Steinbugler which petitioner had to pay is it entitled to deduct in the year of payment as additional compensation to Steinbugler.  It is clear that petitioner is not entitled to deduct the full amount of $308,909 which it originally claimed on its return.  As we have already stated, petitioner no longer contends that it is entitled to deduct that much.  Petitioner's main contention now is:

> The cash payment of $270,787.25, representing the principal of the judgment (after the deduction of the amount owing by Steinbugler to Petitioner), which Petitioner was required to pay to Steinbugler pursuant to the final decision of the Court of Appeals of New York, constitutes additional compensation to Steinbugler or damages arising out of an employment contract and is an ordinary and necessary expense incurred by Petitioner in carrying on its trade or business. As such it is deductible in computing Petitioner's taxable income for the year 1943, the year in which the judgment became final.

It seems to us that another view would be that petitioner, in its settlement of the principal amount of the judgment of $387,134, acquired from Steinbugler property, namely 1,500 shares of petitioner's common stock, which had a value of $115.36 per share or a total of $173,040. ⹁ Subtracting this $173,040 from the principal of the judgment, $387,134, which petitioner satisfied, leaves $214,094 for which petitioner received no offsetting asset, and it seems reasonable to hold that at least this much of the payment which petitioner made in 1943 represented additional compensation to Steinbugler for his services over the years which intervened between the time when Steinbugler purchased his stock and when he resigned from petitioner's service in 1936.  It was not possible until 1943 to determine what amount petitioner would have to pay as a result of the litigation.  It was in 1943 that petitioner paid the amount of the judgment, and it is for that year that petitioner is entitled to a deduction resulting from the payment of the judgment, although not in the entire amount which it claimed.  Cf. *Electric Storage Battery Co.*, 39 B. T. A. 121.  We hold that petitioner is entitled to a deduction in 1943 of at least $214,094 on account of the payment of this Steinbugler judgment and that amount should be used as a deduction in a recomputation under Rule 50, instead of the $308,909 which petitioner claimed on its return for that year.  The fact that such additional compensation is for services rendered by Steinbugler in prior years is not material.  *Lucas* v. *Ox*

*Fibre Brush Co.*, 281 U. S. 115; *Hudson Motor Car Co.* v. *United States*, 3 Fed. Supp. 834.

In view of our holding that petitioner is entitled to deduct the above mentioned amount of $214,094 in 1943, it is apparent that petitioner has no net income for 1943 and, therefore, it becomes unnecessary to consider adjustments (a) and (c) for 1943.

We next consider as one issue adjustments (a) and (b) for 1942. The facts as to these adjustments are set forth in our findings. These facts in substance show that in the litigation with Steinbugler petitioner was not endeavoring to acquire any capital asset. It was not defending the title to any stock which it already owned. On the contrary, it was strenuously resisting the suit of Steinbugler, a former employee, in the regular course of its business. The very essence of this litigation was Steinbugler's effort to enforce an employment contract to repurchase the stock at a price which Steinbugler thought he was entitled to receive. Petitioner contested both its obligation to repurchase and the amounts asked for by Steinbugler. Title to the stock was involved only incidentally. The fact that petitioner was the loser in this litigation and was forced to acquire the stock against its will and pay the judgment which Steinbugler obtained against it, does not, in our opinion, impair its right to deduct the litigation expenses of that suit. We hold that the amounts expended by petitioner in 1942 for legal fees and litigation expenses, all in connection with the Steinbugler litigation, are deductible in 1942 under section 23(a)(1)(A), *supra*. Cf. *Kornhauser* v. *United States*, 276 U. S. 145; *Welch* v. *Helvering*, 290 U. S. 111.

### Capital Stock Tax Issues.

The issues under this main division are whether the respondent erred in making adjustment (c) for 1942 and adjustment (d) for 1943, which adjustments we have set out in our opening statement. The facts concerning these issues are fully stated in our findings and need not be repeated here. Ordinarily, in view of our holding under the Steinbugler litigation issues that petitioner is entitled to deduct $214,094 in 1943, which leaves petitioner without any net income for that year, it would not be necessary to consider adjustment (d) for 1943. However, it is believed that a consideration of this issue will aid in the solution of the issue relative to adjustment (c) for 1942.

Relative to the amount of $202.50 which the respondent added to petitioner's income under adjustment (c) for 1942, petitioner contends that the proper way to treat this item is to disallow $202.50 of the $2,702.50 allowed for 1941. We express no opinion as to what should be done for 1941, as that year is not before us. Cf. *Baltimore Transfer Co.*, 8 T. C. 1. In *Athens Roller Mills, Inc.* v. *Commissioner*, 136 Fed.

(2d) 125, the Circuit Court of Appeals for the Sixth Circuit, among other things, said:

The income taxing Statutes contemplate that tax liability is to be determined for annual periods on the basis of facts existing at the end of each such period. Under this plan, items deducted from gross income in one year and recovered in a later year become gross income in the year of recovery. The concept of the taxing statutes is violated if items of either gross income or deductions for different years are commingled. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359.

In the instant proceeding the $202.50 which was allowed as a deduction in 1941 as a part of the deduction of $2,702.50 allowed for that year was in no sense "recovered" by petitioner in 1942. No refund of $202.50 was collected by petitioner in that year. The respondent was, therefore, in error in adding the amount of $202.50 to petitioner's income for the year 1942.

Relative to the disallowance of the amount of $2,498.75 for 1942 and the additional allowance of the same amount for 1943, we approve the respondent's determination. Petitioner kept its books and filed its returns upon the accrual basis. It did not accrue its capital stock tax liability until the calendar year in which the capital stock tax period ended and payment was made. This was error, as it was in effect placing these items on a cash basis. We have consistently held (except where a taxpayer treated its capital stock tax liability on a monthly accrual basis, as was done in *Atlantic Coast Line Railroad Co.*, 4 T. C. 140, and was not done in the instant case) that the capital stock tax liability accrues at the beginning of the capital stock tax period rather than at its close. *Bowman Hotel Corporation*, 24 B. T. A. 1193, 1208 (issue No. 4); *Continental Baking Corporation* v. *Helvering*, 77 Fed. (2d) 119; *T. H. Symington & Son, Inc.*, 35 B. T. A. 711, 750 (issue No. 6); and *Louisiana Delta Hardwood Lumber Co.*, 7 T. C. 994 (issue No. 2).

### Section 102 Issues.

As set out in our opening statement, the respondent determined that petitioner was subject to the surtax computed at the rates prescribed by section 102 of the Internal Revenue Code for the calendar years 1942 and 1943. In view of our holdings relative to the Steinbugler litigation issues, it is apparent that petitioner had no net income for 1943 and could not be subject to any surtax for that year. We need, therefore, consider only whether the respondent erred in determining that petitioner was subject to the surtax for the calendar year 1942. The applicable statute (sec. 102, I. R. C.) is set forth in the margin.[4]

---

[4] SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS.

(a) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the

The respondent did not determine, and he does not contend, that petitioner was "formed" for the prohibited purpose. He did determine and he does contend that petitioner was "availed of" for that purpose. It may also be noted that the respondent did not determine, nor does he contend, that petitioner was "a mere holding or investment company" as that term is used in section 102 (b). It is clear, of course, that petitioner is not a mere holding or investment company, but is a very active business enterprise, with a large volume of business. It was formed in 1909, long before there was any surtax on the income of corporations, for the purpose of engaging in the business of selling coal on a commission basis for various coal mines, financing the accounts, and collecting from its customers, and it was engaged continuously in that business up to and including the taxable years here in question.

Large amounts of cash were required by petitioner in carrying on its business. To get this cash petitioner frequently had to borrow large sums of money. The respondent determined and contends that during the calendar year 1942 petitioner permitted its earnings or profits "to accumulate beyond the reasonable needs of the business," as that phrase is used in section 102 (c) of the code. By virtue of section 102 (c), the accumulation of earnings or profits beyond reasonable needs is determinative of a purpose to prevent the imposition of the surtax upon the shareholders, unless the corporation by a clear preponderance of evidence proves to the contrary. See *Whitney Chain & Mfg. Co.*, 3 T. C. 1109; affd., 149 Fed. (2d) 936.

Whether petitioner during the taxable year 1942 permitted its earnings or profits "to accumulate beyond the reasonable needs of the business" and whether petitioner was "availed of" for the prohibited purpose are questions of fact, to be determined from all the evidence. See secs. 19.102–2 and 19.102–3 of Regulations 111. See also *Helvering* v. *National Grocery Co.*, 304 U. S. 282; *Helvering* v. *Chicago Stock Yards Co.*, 318 U. S. 693; *Cecil B. DeMille*, 31 B. T. A. 1161; affd., 90 Fed. (2d) 12; certiorari denied, 302 U. S. 713; and *Lion Clothing Co.*, 8 T. C. 1181.

We do not deem it necessary to enter into a lengthy repetition of the facts, which are fully set forth under this issue in our findings of fact, and on the basis of such facts we think petitioner has met its burden

surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following:

\* \* \* \* \* \*

(b) PRIMA FACIE EVIDENCE.—The fact that any corporation is a mere holding or investment company shall be prima facie evidence of a purpose to avoid surtax upon shareholders.

(c) EVIDENCE DETERMINATIVE OF PURPOSE.—The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.

of proof. From those facts we are well convinced that petitioner's failure to pay dividends in 1942 was not due to any intent or purpose of preventing the imposition of the surtax upon its shareholders, but, on the contrary, was due to a necessity which it, in good faith, believed existed for conserving its cash to meet the reasonable needs of its business, particularly in view of the Steinbugler litigation then pending and not yet finally decided and the legal and accounting advice which it had received from reputable sources that it could not in that year lawfully pay dividends under the laws of the State of New York.

We decide this issue in favor of petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*