**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**R. J. REYNOLDS TOBACCO COMPANY, Respondent.**

No. 7659.

United States Court of Appeals Fourth Circuit.

Argued June 12, 1958.

Decided Oct. 6, 1958.

Thomas N. Chambers, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D.C., on the brief), for petitioner.

Marion N. Fisher, New York City, and Leon L. Rice, Jr., Winston-Salem, N. C. (Philip C. Potter, Jr., Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, and Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., on the brief), for respondent.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOBELOFF, Chief Judge.

In the years 1949 and 1950, the R. J. Reynolds Tobacco Company claimed deductions in its income tax returns for amounts distributed to its employees pursuant to one of its by-laws. Although the employees shared in the fund in proportion to their stockholdings in the company, it claimed that the payments were compensation for services and for that reason deductible as an ordinary and necessary expense. The Commissioner of Internal Revenue disallowed the claims and the taxpayer sought review in the Tax Court. From the judgment of that court allowing deductions for part of the payments, the Commissioner appeals.

The by-law was originally adopted in August, 1912, before the adoption of the Sixteenth Amendment and the advent of income tax laws. It provided for an annual payment, in the discretion of the board of directors, to those Reynolds officers and employees who had been in the company's employ and had owned its stock for at least twelve months. The total payments were not to exceed ten percent of the company's profits in excess of those earned in 1910 and were to be apportioned among the officers and employees according to their respective holdings of shares of the company's stock. The payments were in addition to their regular salaries, and in addition also to the regular dividends paid to all stockholders including employees.

In proposing the by-law, the Reynolds' management stated:

"After full consideration, the Board of Directors have determined that the interest of the Company and all of its stockholders will be materially advanced by encouraging its officers and employees, a number of whom are not stockholders, to invest in its stock and to be thus more closely identified with its affairs."

Following the passage of the by-law, the company began acquiring stock for sale to its employees. The management's aim was to place stock with employees who were doing a good job, showed promise of becoming more valuable to the company, filled more important positions, and had the interest of the company "at heart." In 1935, however, Reynolds was forced to discontinue the sale of its stock to employees because of certain restrictive regulations of the Securities and Exchange Commission. Thereafter, although the management was unable directly to supervise employee stock acquisitions, it continued to check on the amount of stock employees were acquiring, and to make known its displeasure with those employees who purchased too much. Even this general supervision

was relaxed when it became known in 1949 that the by-law was gradually passing out of existence, although as late as 1950 employees understood that they were not to purchase stock without consulting a superior.

Despite supervision by management, some employees came through the years to own amounts of stock which, it cannot be denied, failed to represent a fair and reasonable relation to their value to the company. Such cases resulted in the main from inheritances, gifts, purchases without management approval, failure of some employees to fulfill their original promise, and stock dividends and splits in the earlier years.

Nevertheless, management felt that the instances of excessive holdings did not affect the general satisfactory operation of the by-law. By looking to the by-law payments to provide additional income for such personnel, Reynolds was able to employ and retain competent supervisory and executive personnel, despite the fact that it paid relatively low fixed salaries.

The by-law remained substantially unchanged until June 29, 1949, when it was amended to provide for the gradual elimination of the special payments. The amendment called for the special participation in profits to be reduced from ten percent to zero, at the rate of one percent per year, so that after 1958 such payments would be terminated. As a result of the impending reduction in the by-law payments, the company began in 1949 to liberalize its basic salary scales.

Before 1949, Reynolds never claimed any income tax deductions for the by-law payments and it did not withhold and remit to the Commissioner any part of the by-law payments as withholding taxes or employment taxes. In 1949 and 1950, the company made such withholdings and filed appropriate information returns, reporting such payments as part of the employees' compensation. On the same theory it simultaneously filed claims for refund of income or excess profits taxes for past years, 1940 through 1948. The Commissioner disallowed both the deductions for 1949 and 1950 and the claimed refunds for the earlier period. The Court of Claims was asked to review the denial of refunds in the earlier years, and the Commissioner's disallowance of deductions for 1949 and 1950 was brought in due course to the Tax Court for review.

The Tax Court was convinced that part of the 1949 and 1950 payments were reasonable compensation. Because Reynolds was unable to prove the exact portions of each employee's payments which were reasonable, the Tax Court, "[h]aving in mind the principle of Cohan v. Commissioner, 2 Cir., 1930, 39 F. 2d 540, and in the exercise of our best judgment," devised a formula by which it determined what amounts were reasonable compensation. For 1949 the Commissioner had determined deficiencies of $1,063,555.43, and for 1950 $1,275,510.88. These deficiencies were reduced by the Tax Court to $657,618.28 and $727,134.48 respectively for the two years.

After the Tax Court's decision as to the 1949 and 1950 payments, the Court of Claims, taking a somewhat divergent view, affirmed the Commissioner's disallowance of the refund claims for the years 1940 through 1948. R. J. Reynolds Tobacco Co. v. United States, Ct. Cl., 149 F.Supp. 889, 897. In an effort to minimize the conflict between the decisions of the two courts, the Court of Claims, speaking of the Tax Court's decision, said:

"We think it would be proper to note at this time that we are not unmindful of the tax court decision in R. J. Reynolds Tobacco Company v. Commissioner, T. C. Memo 1956-161, decided July 6, 1956, in which that court decided that part of the bylaw payments for the years 1949 and 1950 were reasonable compensation and devised a formula to determine just what part of the payments represented reasonable compensation. However, the court in that case was deciding the nature of the payments made pursuant to

a different bylaw, on a different record, and for different years than the ones in question here."

In this appeal, to fortify his arguments that the payments in the latter years were not deductible, the Commissioner uses in large measure reasons which the Court of Claims gave for finding Reynolds not entitled to a refund for the earlier years.

1. The Commissioner's initial contention here is that the Tax Court committed error in holding part of the by-law payments to be compensation and part dividends. While it is certain that the Tax Court held only part of the payments deductible as reasonable compensation, its opinion does not make it completely clear whether the excess was designated as dividends or merely as unreasonable compensation. We will assume, however, in accordance with the Commissioner's contention, that the Tax Court did regard the non-deductible part of the payments as dividends.

The Commissioner earnestly submits that such a division cannot be made because all the payments were necessarily of the same nature, and hence either all dividends or all compensation. To fortify this contention, he relies upon the following language from page 895 of the Court of Claims opinion in the Reynolds case in 149 F.Supp.:

"* * * However, conceding that the plan was designed for incentive purposes, the payments must have been reasonable compensation and not dividends in order to be deductible under section 23(a) (1) (A) of the Internal Revenue Code of 1939 because the two were mutually exclusive."

We agree that compensation and dividends are different things, but that is not to say that for income tax purposes the payor is to get no deduction at all if an employee stockholder, is given compensation and dividends in a single payment. There is precedent for the view that a lump sum may be partly compensation for services and partly dividends; and that in such a case the compensatory part should be allowed as a deduction while only the excess should be disallowed. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379; United States v. Philadelphia Knitting Mills Co., 3 Cir., 273 F. 657; Becker Bros. v. United States, 2 Cir., 7 F.2d 3.

If there is a reasonable basis in the record for isolating that part of the payment which is reasonable compensation for services, we think that a deduction for that part should be allowed. This is true whether the excess is classified as unreasonable compensation or as dividends. There is no basis in reason, the Tax Code, or administrative practice for the insistence that the part which is not deductible fatally infects the part which clearly is.

2. Next, the Commissioner argues that the Tax Court failed to apply the proper legal test of compensation. Section 23 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23, which is here applicable, provided that in computing net income, there shall be allowed as deductions "[a]ll the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services *actually rendered.*" (Our italics.) Treasury Regulation 111, after quoting the Code, declared: "The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments *purely for services.*" (Our italics.) Stressing the last phrase, the Commissioner maintains that the regulation means that no part of the payments may be allowed as a deduction if the employee was required to do anything other than perform services, and that since Reynolds' plan required employees to purchase stock, neither the payments as a whole, nor any part, may properly be viewed as "purely for services."

The construction of the regulation which the Commissioner suggests is needlessly rigid and unnatural. We think the phrase "purely for services"

simply means that no deduction shall be allowed for payments that are not for services but represent dividends or capital distribution. The requirement that the employees shall own a corporation's stock cannot *ipso facto* convert into dividends, payments which were purely for services. Those payments which were intended to and did in fact compensate for services actually rendered are deductible; the rest are not.

In United States Steel Corp. v. Commissioner, 1943, 2 T.C. 430, the payments were also on the basis of stock ownership. The plan allowed employees to purchase stock with deferred monthly deductions from wages, title to the stock to remain in the company until the purchase price had been fully paid. As part of the offer the company agreed to credit employees' stock purchase accounts with amounts equal to the dividends paid on the stock. Should any employee fail to purchase the stock or leave United States Steel before completing his stock purchase, the amounts credited to him were to be divided among those employees who did complete their purchases. The Tax Court held that these credits to the employees' accounts were deductible by the company as "*compensation for services rendered.*" This result was reached notwithstanding the plan's requirement that in order to receive the benefit of the credits, employees must purchase the company's stock.

We are not persuaded that Reynolds should be deprived of an income tax deduction for these payments which the Tax Court has found to be reasonable compensation, simply because the method devised for employee profit sharing involved stock ownership. The company's purpose in encouraging employees to own its stock was a legitimate one, and it is not suggested that the payments were an attempt to distribute profits to shareholders in the guise of salaries. To hold that the law permits no part of these payments to be treated as compensation would be to torture the obvious meaning of the Tax Code and the regulation.

3. As his final argument, the Commissioner says *arguendo* that if the amounts paid to employee-shareholders may be considered compensation, no part thereof has been proved to be a "reasonable allowance" to any individual employee.

Approximately 1900 employees participated in the by-law payments. The company introduced substantial evidence bearing on the over-all reasonableness of these payments, and it was clear that in light of Reynolds' policy to maintain relatively low salary scales, it was reasonable for substantial bonuses to be paid as additional compensation. However, Reynolds failed to show with precision and in detail the responsibilities of each participating employee and the value of his individual services. The Tax Court pointed out that in determining reasonableness, the individual salaries must be considered and not the over-all reasonableness of the taxpayer's wage bill. The Court recognized the taxpayer's problem in proving the reasonableness of the compensation to each of the 1900 participating employees, but pointed out that the absence of this detail evidence necessitated the Court's application of the Cohan rule. The Commissioner argues that absent such specific testimony as to any employee, the formula applied by the Tax Court was an arbitrary and uninformed guess which cannot be justified by the Cohan rule.

The language of the Court in Rugel v. Commissioner of Internal Revenue, 8 Cir., 1942, 127 F.2d 393, 395, is completely responsive to the Commissioner's contention:

"A taxpayer always has the burden of establishing his right to any claimed deduction for income tax purposes. Where he seeks to have a deduction allowed by the Board of Tax Appeals, as an ordinary and necessary business expense, within the meaning of section 23(a) of the Revenue Acts of 1936 and 1938, 49 Stat. 1648, 52 Stat. 447, 26 U.S.C.A., Internal

Revenue Acts, pages 827 and 1011, he must furnish as definite proof as is reasonably possible, in the situation and circumstances, of the nature and details of the expenditures claimed to have been made. If the evidence is convincing that expenditures have thus been made, but the taxpayer is able to furnish only general proof of their nature and details, the Board should consider all the evidence in the light of its general experience and make such allowance for the sums expended as it conscientiously feels would represent fair and reasonable expenses for such ordinary and necessary purposes in the circumstances of the taxpayer's business. Where this has been done, the Circuit Court of Appeals has no right to substitute its judgment for that of the Board of Tax Appeals. It is only where the Board has acted arbitrarily and without regard for the evidence that the Court may interfere in such a situation."

█ It was established to the Tax Court's satisfaction that even after the by-law payments were added to the fixed salaries, the taxpayer's payments to its employees were reasonable in relation to salaries paid by its competitors. We cannot say that where the Court is convinced that at least some of the payments were compensation, it is by force of law helpless to estimate the amount which was reasonable.

The Commissioner places reliance upon Williams v. United States, 5 Cir., 1957, 245 F.2d 559. In that suit for refund, the District Court had refused to make any allowance by approximation for entertainment expenses because the taxpayer offered no guide whatever which could be used in making a fair estimate of expenditures. On appeal, the Circuit Court held that the lower court could not be compelled to make such an estimate. However, in doing so, the Court significantly added at page 560 of 245 F.2d:

*"It may not be compelled to estimate even though such an estimate, if made, might have been affirmed.* For the basic requirement is that there be sufficient evidence to satisfy the trier that at least the amount allowed in the estimate was in fact spent or incurred for the stated purpose. Until the trier has that assurance from the record, relief to the taxpayer would be unguided largesse." (Our italics.)

The cited case does not support the Commissioner's position here. Rather, it suggests that while the Court of Claims in the other Reynolds case, supra, could properly have refused to make an estimate on the basis of the facts before it, the Tax Court, which chose to make such an estimate upon the facts in this record, may still be affirmed.

On this point the Court of Claims, as already indicated, disclaimed any conflict between its decision and that of the Tax Court in respect to the later years.

"The Tax Court carefully pointed out in its opinion that the taxpayer prior to 1949 had a shifting point of view, but that since then its attitude as to the nature of the *distribution* has been constant. The Tax Court then devised a formula from the record before it and permitted recovery by taxpayer. This court cannot, on the record before us, devise any formula such as the Tax Court has. We must look to the proof in this case, and we find a complete failure on the part of plaintiff in its proof of reasonableness."

The Court of Claims' inability to follow the Tax Court's lead in devising a formula may in part have sprung from the fact that there is a somewhat greater burden of proof upon the taxpayer in a refund suit than in a Tax Court proceeding contesting a deficiency assessed by the Commissioner. This distinction was enunciated by Judge Learned Hand in Taylor v. Commissioner, 2 Cir., 1934, 70 F.2d 619, 620, af-

firmed as Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623:

" * * * If the burden of proof goes so far as to demand not only that the taxpayer show that the deficiency assessed against him is wrong, but what is the proper deficiency, or that there should be none at all, the decision was right, even though we know that the tax is too high. In an action to recover taxes unlawfully collected the burden does go so far * * * But the reason for this is obvious; a plaintiff, seeking an affirmative judgment measured in dollars, must prove how much is due. His claim is for money paid and he must show that every dollar he recovers is unjustly withheld. So it is not enough merely to prove that the tax as a whole was unlawful; some of the dollars he paid may nevertheless have been due. But this reasoning does not apply when the proceeding is to review an assessment. Although that does indeed partake of the nature of a judgment, and the taxpayer has the burden of proving that it was wrong, after he has done so, he need not, at least under ordinary principles of procedure, prove that he owed no tax, or what was the tax that he did owe. * * * "

■ We cannot say that the Tax Court's conclusions were inevitable or that its estimate is not fairly debatable, but we think that upon the record, its decision was not arbitrary, unreasonable or clearly erroneous. Since it was fully satisfied that the taxpayer was entitled to a deduction, it was proper for the Court to apply the Cohan rule and allow a minimum amount.

### Conclusion

Upon consideration of the entire record, we conclude that there is adequate basis for the Tax Court's finding that at least the part of the by-law payments it allowed as a deduction was intended to be and was in fact reasonable compensation. The fact that in some instances the payments were excessive, may require adjustment in the amount to be allowed as a deduction, but it does not destroy the compensatory nature of the rest. Precision in equating bonuses to services rendered is extremely difficult. Even when bonuses are not related to stockholding, and payments, equal or unequal, are made to employees in the same job classification, factors of favoritism and errors of judgment may occur, resulting in inequalities. This is unavoidable in the operation of any bonus system. Since it is so difficult for the employer to devise a structure of bonuses that fairly reflects the value of services rendered and gives employees the desired incentives, we cannot accept the Commissioner's criticism of the Court's "formula" that it does not compute the result to a nicety. An estimate, rather than a precise calculation, is often the best one can do.

Here the estimate is not merely fanciful, as in MacCrowe's Estate v. Commissioner of Internal Revenue, 4 Cir., 1958, 252 F.2d 293, and 4 Cir., 1956, and 240 F.2d 841, or Timmons v. Commissioner of Internal Revenue, 4 Cir., 1952, 198 F.2d 142, but it is sufficiently supported. In a complicated tax situation the Court has given rational and cautious treatment to the basic facts, which are largely undisputed. It has resolved doubts against the taxpayer by limiting the over-all allowance to an aggregate found reasonable upon a comparison of the Reynolds total payments for services with corresponding payments by its chief competitors. These comparisons were in relation to total business done by the several leaders in the industry, their total net profits, dividend distributions to non-employee stockholders, and other factors. In addition, the Court further disallowed apparent excesses paid to certain individuals. Between these two limiting lines, the resulting deduction which the Court allowed appears to be no more than fair and reasonable, filtering out all non-deductible amounts.

In past years the taxpayer took positions concerning the by-law payments that are inconsistent with its present contentions. The Government, too, has not followed a consistent line. In this situation, little assistance is to be derived from an analysis of past actions of the parties, and we agree with the Tax Court's view that no inferences helpful to either can be made therefrom.

In the face of the Tax Court's conscientious and intelligent approach to a difficult task, its findings are entitled to a broad tolerance in the reviewing court. The alternative of total rejection of all deductions, as urged by the Commissioner, is not legally required and is palpably unjust.

Often, and with good reason, the Commissioner pleads for the courts to look through form to substance. In this instance the taxpayer may fairly make the same plea.

The order will be

Affirmed.