JOHN G. RUSSOS and IRENE S. RUSSOS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent ONE HOUR SPIC AND SPAN CLEANERS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Russos v. Commissioner
Docket Nos. 9344-75, 9352-75.
United States Tax Court
T.C. Memo 1977-309; 1977 Tax Ct. Memo LEXIS 132; 36 T.C.M. (CCH) 1222; T.C.M. (RIA) 770309; September 13, 1977, Filed Daniel R. Dixon and Robert E. Monroe, for the petitioners. William S. Patterson, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined the following deficiencies *133 in petitioners' Federal income tax: Calendar Dkt. No.
Petitioner
Year
Deficiency
9344-75
John G. Russos and
1971
$1,417.84
Irene S. Russos
1972
684.29
9352-75
One Hour Spic and
1971
$ 509.13
Span Cleaners, Inc.
1972
880.88
In addition, respondent determined that for the taxable year ended December 31, 1972, petitioner One Hour Spic and Span Cleaners, Inc. (Spic & Span) was liable for an addition to tax under section 6651(a)(1), I.R.C. 1954, [1] in the amount of $132.13. One of the issues raised by the pleadings has been conceded by petitioners; the following issues remain for decision: (1) Whether for each of the years 1971 and 1972 the corporate petitioner, Spic & Span, is entitled to deduct under section 162(a)(1) as compensation of officers and employees, amounts paid by it in satisfaction of personal obligations of its sole shareholders, the Russos; (2) whether for taxable year 1972 petitioners John G. Russos and Irene S. Russos, are entitled to a *134 deduction for charitable contributions in excess of $150; and (3) whether the failure of petitioner Spic & Span to timely file its 1972 Federal income tax return was due to reasonable cause. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. John G. Russos and Irene S. Russos, husband and wife, (petitioners in Docket No. 9344-75) resided in Raleigh, North Carolina, at the time their petition in this case was filed. Their joint Federal income tax returns for 1971 and 1972 were timely filed with the Southeast Region Internal Revenue Service Center at Memphis, Tennessee. Spic & Span (petitioner in Docket No. 9352-75) is a North Carolina corporation that operates a dry cleaning business. During the years in issue and at the time its petition in this case was filed, its principal place of business was located in Raleigh, North Carolina. The corporation also filed its returns for the years 1971 and 1972 with the Internal Revenue Service Center in Memphis. The Russos and Spic & Span prepared their respective Federal income tax returns for the years at issue on the cash receipts and disbursements method of accounting, employing the calendar *135 year as their annual accounting period. Issue 1. Deductibility of Corporate Payments
On or about January 1, 1971, Mr. and Mrs. Russos purchased all of the capital stock of Spic & Span from Mattie L. Smith of Raleigh, North Carolina. The Russos agreed to pay $8,000 of the $45,000 purchase price in cash at the time of closing. In addition, they executed a promissory note in favor of Mrs. Smith in the amount of $37,000. Of this sum, $2,000 was to be paid without interest on April 1, 1971. The $35,000 balance with interest at the rate of 7 percent per annum was to be paid in monthly installments of $406.78. Spic & Span joined the Russos in the execution of the note, and the note was secured by the corporation's assets. During taxable year 1971, Spic & Span paid Mattie L. Smith $6,674.59 -- $2,370.66 of interest and $4,303.93 of principal -- on accout of the promissory note. The following year, the corporation made note payments to Mrs. Smith totaling $4,506.36, $2,819.45 of which represented interest. In addition, during 1971 Spic & Span paid $354 in legal expenses incurred by the Russos in connection with their purchase of the Spic & Span stock. At a January 1, 1971, meeting, *136 the stockholders determined that petitioner John Russos should draw a weekly salary of $250 with an annual bonus not to exceed $3,000.Mr. Russos oversaw Spic & Span's entire operation. On the average he worked about 80 hours per week. On Mondays through Saturdays, he usually arrived at the Spic & Span plant at 6:30 a.m. and stayed until around 7:00 p.m. On Sundays after church he frequently went to the Spic & Span premises to repair machinery or perform janitorial duties. During the first half of 1971, Mrs. Russos was employed in a restaurant in Winston-Salem, where the couple had resided prior to the purchase of the Spic & Span business. In the second half of that year, she joined her husband in Raleigh and worked approximately 20 hours per week for Spic & Span. Her duties included receiving clothes, assembling, bagging, and racking cleaned clothes, and acting as cashier. She continued working at Spic & Span for approximately 20 hours a week throughout 1972. In 1971 and 1972, petitioner John Russos received $13,900 and $13,000, respectively, in salary payments from Spic & Span. Mrs. Russos received no compensation whatsoever for her work, although fellow employees doing *137 comparable work received the minimum wage. It was not uncommon for a person performing the duties performed by Mr. Russos during 1971 and 1972 for a business the size of Spic & Span in the North Carolina area to receive a salary of $15,000 a year. For work on a full-time basis such as that performed by Mrs. Russos on a part-time basis a salary of $5,000 to $6,000 a year for a business the size of Spic & Span operating in the North Carolina area was not uncommon. On its corporate income tax returns for 1971 and 1972, Spic & Span deducted $13,900 and $13,000, respectively, as compensation paid to Mr. Russos; The Russos included these amounts in their income tax returns for those years. Spic & Span did not deduct as compensation to its officers either the principal and interest payments made by it to Mattie L. Smith on account of the promissory note given in connection with the Russos' purchase of the Spic & Span stock or the payment of legal expenses incurred in that transaction. On its corporate income tax returns for 1971 and 1972, Spic & Span claimed interest expense deductions of $2,370.66 and $2,819.45, respectively, for interest paid by it to Mattie L. Smith on the promissory *138 note. Spic & Span amortized the $354 it paid for the legal expense incurred in connection with the Russos' stock purchase and deducted $75 of the amount on its 1971 return and $139 on its 1972 return. Spic & Span did not withhold income taxes or Federal Insurance Contribution Act taxes with respect to either the payments to Mrs. Smith or the payment of legal expenses. The amounts of the corporation's payments to Mrs. Smith and the payments of legal expenses were not listed on the W-2 forms provided to Mr. Russos by the corporation.The individual petitioners did not include any part of these payments in their income for 1971 or 1972. In his notice of deficiency to the corporation dated July 18, 1975, respondent disallowed the claimed interest expense deduction of $2,370.66 in 1971 and the similar deduction of $2,819.45 for 1972. The notice states that the deductions were disallowed because the interest expenses were not the corporation's, but were rather the Russos'. For the same reason, respondent denied the deductions for amortization of the legal expenses.Accordingly, Spic & Span's income was increased in the amounts of these disallowed deductions. In his statutory notice *139 of deficiency to the individual petitioners, also dated July 18, 1975, respondent determined that the amounts paid by the corporation on the note to Mattie L. Smith and for legal expenses in connection with the stock purchase constituted dividend income to the Russos. Respondent also determined that the Russos were entitled to the maximum dividend exclusion in both 1971 and 1972 and that they, rather than the corporation, were entitled to deductions of $2,370.66 and $2,819.45 for interest on their note to Mattie L. Smith. Issue 2. Charitable Contribution
On their individual income tax return for 1972 Mr. and Mrs. Russos deducted $405 for amounts contributed to the Greek Orthodox Church in Raleigh. Respondent disallowed $255 of this claimed deduction, allowing a charitable contribution deduction of $150, the same amount claimed by the Russos as a charitable contribution deduction on their 1971 return. The Russos' contributions to their church were always in cash, and the charitable contribution deduction claimed by them was an estimate of these contributions. On the average they attended regular Sunday church services three times a month, contributing a minimum of $5 *140 on each occasion. They also went to church on certain holy days, usually 10 to 15 times a year. On these occasions they made cash contributions. In addition, in 1972 their church started a building fund to which they periodically contributed up to $25. Lastly, for special functions or occasions they would purchase tickets, donate flowers, or give additional cash contributions. Issue 3. Section 6651(a) Addition to Tax
Petitioner Spic & Span filed its Federal corporate income tax return for calendar year 1972 with the Director of the Southeast Region Service Center at Memphis, Tennessee. The return was prepared by Ernest Pearce who had served as Spic & Span's bookkeeper prior to the Russos' purchase of the Spic & Span stock. Mr. Pearce agreed with John Russos to continue serving as bookkeeper for Spic & Span after the Russos acquired the corporation's stock in 1971 and did continue with this work. Mr. Russos entrusted Mr. Pearce with all of Spic & Span's bookkeeping responsibilities, and relied upon him to prepare the corporation's income tax returns. Under section 6072(b), Spic & Span's 1972 return should have been filed no later than March 15, 1973. Ernest Pearce *141 signed the 1972 return of Spic & Span on March 10, 1973; John Russos signed it on April 15. The return bears a stamp indicating that it was not received by the Memphis Service Center until June 5, 1973. In his notice of deficiency, respondent determined that Spic & Span was liable for an addition to tax under section 6651(a)(1) for failure to timely file its 1972 return. OPINION Issue 1. Deductibility of Corporate Payments
Petitioners recognize that a corporation's payment of a shareholder's personal obligation is income to the shareholder and have conceded that the Russos realized income in the amount of the payments made by the corporation in 1971 and 1972 to Mrs. Smith on the note given for purchase of stock and in the amount of the corporation's payment of their legal expenses. See Wall v. United States,164 F.2d 462 (4th Cir. 1947). Only the character of the income is at issue. Petitioners contend that these payments were additional salary payments to the Russos, entitling the corporation to an additional deduction under section 162(a)(1) for compensation *142 of officers and employees. Respondent argues that no such deduction is allowable as these payments were constructive dividends to the Russos. Petitioners concede that there existed earnings and profits of the corporation out of which dividends could have been paid. Payments are deductible as compensation only if they are made with the intent to compensate. Paula Construction Co. v. Commissioner,58 T.C. 1055 (1972), affd. 474 F.2d 1345 (5th Cir. 1973); Electric & Neon, Inc. v. Commissioner,56 T.C. 1324, 1340 (1971), affd. 496 F.2d 876 (5th Cir. 1974). Whether the requisite intent to compensate existed is a question of fact to be determined on the basis of the circumstances existing at the time the payments were made. Paula Construction Co. v. Commissioner,supra.
Our consideration of the circumstances surrounding the note payments and the payment of legal expenses convinces us that they were not made with the intent to compensate either Mr. or Mrs. Russos. The parties did not treat the payments *143 as salary payments. Spic & Span neither withheld F.I.C.A. and income taxes from the payments nor included the amount of the payments on the W-2 forms provided to Mr. Russos. Mr. Russos drew his full authorized regular salary and an additional $900 in 1971. Insofar as this record shows, no further bonus payment for Mr. Russos was authorized by Spic & Span and no compensation was ever authorized for Mrs. Russos by Spic & Span.On its income tax returns for 1971 and 1972 the corporation did not claim a deduction for salary expenses for the note payments or legal expense payments. The individual petitioners did not report the note payments or legal expense payments as additional salary on their income tax returns for the years in issue. The testimony of both Mr. and Mrs. Russos at trial is contrary to their position that these payments were intended to be compensatory. Explaining why she was willing to work at Spic & Span without receiving any salary, Mrs. Russos said, "I thought I was working for myself. I had no reason to get paid * * *." She further explained that she worked in order to provide good service to customers but said, "I didn't consider being paid. Why should I? *144 I can't understand this being paid." Mr. Russos likewise testified that he saw no point in providing his wife with any salary. In addition, Mr. Russos testified that he did not receive any compensatory benefits from Spic & Span in addition to his reported salary of $13,900 in 1971 and $13,000 in 1972. The record as a whole indicates that by having the corporation pay his obligation Mr. Russos acted in disregard of the distinction between the corporation's funds and his own. This error was undoubtedly due to carelessness and inexperience. It is also true that the Russos would have been justified in receiving more compensation than they received from Spic & Span.They are both industrious and assiduous workers, and their services are clearly worth more than the salary paid to Mr. Russos. The fact that they could have received higher salaries, however, does not establish that the corporation's payments on their behalf were intended to be additional salary.The corporation might have authorized a higher salary for Mr. Russos, but it did not do so. Certainly Mrs. Russos might have been paid by the corporation for her work, but she was not. We must decide this case on the basis of *145 what was done, not what might have been done. We cannot retroactively change the character of the payments on the note and the legal expense payments, and we conclude that these payments were not made by Spic & Span with compensatory intent.
The case of Commissioner v. R. J. Reynolds Tobacco Co.,260 F.2d 9 (4th Cir. 1958), affirming a Memorandum Opinion of this Court, relied on by petitioners is distinguishable on its facts from the instant case. In that case the payments were pursuant to a longstanding by-law of the corporation providing for discretionary annual payments in addition to regular salary to certain officers and employees who were stockholders of the company. The payments were treated by the corporation on its books and tax returns as additional compensation of officers and employees. This Court found that part, but not all, of the payments there involved were intended to be and in fact were reasonable compensation. The Circuit Court, in affirming, stated that there was adequate basis for this finding by this Court. In the instant case there is no showing that the payments by Spic & Span on the note and for legal services were intended to be compensation. *146 We hold that Spic & Span is not entitled to deduct any part of the payments made on the note to Mrs. Smith or for legal services rendered to the Russos as additional compensation to the Russos. Issue 2. Charitable Contributions
Respondent proposed to disallow the Russos' charitable deduction for 1972 for contributions to the Greek Orthodox Church to the extent that it exceeded the amount they deducted on their 1971 return. Petitioner John Russos testified at the trial that the increase in the claimed deduction was attributable to amounts periodically contributed to the building fund that was started in 1972. The Russos did not keep records of their cash contributions to the Greek Orthodox Church. Petitioner John Russos' testimony convinces us that the Russos made contributions to their church in an amount in excess of the deduction allowed by respondent. Upon consideration of this testimony, we hold that the Russos are entitled to a deduction for charitable contributions to the Greek Orthodox Church in 1972 of $300. Issue 3. Section 6651(a) Addition to Tax
The final issue is whether respondent properly determined an addition to tax under section 6651(a) against *147 Spic & Span for failure to timely file its 1972 return. The return was due on March 15, 1973, but was not received by the Memphis Service Center until June 5, 1973. When a return is not timely filed, the addition to tax under section 6651(a) is applicable absent a showing by the taxpayer that reasonable cause existed for the failure to timely file.Petitioners argue that the reliance by John Russos on Spic & Span's bookkeeper, Ernest Pearce, to prepare and timely file the corporation's income tax return constitutes reasonable cause. This contention is not supported by the record. The corporation's return was signed by Mr. Pearce on March 10, 5 days before it was due. There is no reliable evidence in the record to show that this return was not turned over to Mr. Russos prior to March 15, 1973. The inference is that it was. In any event, at some point it was turned over to Mr. Russos as he signed it on April 15, 1973, although it was not filed until June 5, 1973. Mr. Russos had signed and timely filed Spic & Span's return for 1971. Consequently, he knew or should have known that a *148 return was required for 1972 and should have found out the date it was required to be filed if he did not know when it was due. In this case there is nothing to indicate that Mr. Pearce did not discharge the duty delegated to him by timely preparing the 1972 return for Spic & Span and delivering it to Mr. Russos for filing. However, even if Mr. Russos in fact relied on Mr. Pearce to file the 1972 return, reasonable cause for failure to timely file Spic & Span's return has not been shown. When responsibility for preparing and filing a return known to be due is delegated by a taxpayer, failure of the delegate to timely file does not, without more, constitute reasonable cause for the taxpayer's failure to timely file. Inter-American Life Insurance Co. v. Commissioner,56 T.C. 497, 511 (1971), affd. per curiam 469 F.2d 697 (9th Cir. 1972; Estate of Duttenhofer v. Commissioner,49 T.C. 200 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969). Accordingly, we conclude that petitioner Spic & Span is liable for an addition to tax under *149 section 6651(a) for failure to timely file its 1972 return. Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue.↩